KETTERER v. ARMOUR & CO.

(District Court, S. D. New York. September 24, 1912.)

FOOD (§ 25*)—INFECTION—DUTY TO INSPECT—LIABILITY TO CONSUMER.

A packer, killing and selling pork to a retailer, to be by him sold to a consumer, owes a direct duty to the latter to inspect the pork, to ascertain whether it is infected with trichinæ, or is otherwise unfit for food, and is liable to the consumer for injuries sustained by failure to perform such duty.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 18; Dec. Dig. § 25.*]

At Law. Action by Sophie Ketterer against Armour & Co. On demurrer to complaint. Overruled.

Charles Dushkind, of New York City (Leonard F. Fish, of New York City, on the brief), for plaintiff.

Breed, Abbot & Morgan, of New York City, and A. F. Reichmann, of Chicago, Ill., for defendant.

NOYES, Circuit Judge. The plaintiff seeks to recover damages for injuries sustained through eating a pork product prepared by the defendant and infected with trichinæ. The plaintiff avers in her complaint that pork so infected is diseased and poisonous; that by proper inspection the presence of the infection can be ascertained; that it was the duty of the defendant to make such inspection, and that it wholly failed in the performance of such duty. The defendant by demurring admits the truth of the allegations and raises the question of the obligation owed by a manufacturer of meat products and to whom it is owed.

The contention of the defendant is that a manufacturer who deals with the middleman and not directly with the consumer owes the latter no duty whatever except the duty owing to all men to refrain from knowingly and willfully inflicting injury. And as willful injury is hardly conceivable, the claim comes down to this, that a producer of meats can take no steps to detect poisonous parasites in his products although the danger of their presence is well known and can be guarded against, and yet may sell such products with impunity so far as the demands of poisoned consumers are concerned.

This contention is based upon the theory that so long as the manufacturer sells only to the dealer or middleman he is a stranger to the consumer; there is no contractual relationship to base a duty upon. It is said that the dealer may sue the manufacturer and that the consumer may sue the dealer, but that the consumer cannot sue the manufacturer. In other words if the claim be well founded the middleman has an effective remedy, but he is not injured. The consumer is injured, but he cannot look to the wrongdoer and must sue the local dealer, who is likely to be irresponsible and is certainly free from fault.

And this contention has support in authority. It is unquestionably the rule in the case of many manufactured articles where the consequences of negligent manufacture cannot be followed down to their final results. Thus, as is pointed out in one of the cases, a careless manufacturer of iron could not be held responsible for the destruction of a steamer from the bursting of a boiler into the construction of which his imperfect material, after passing through many hands, had gone. In such cases, and in others less clear, it is said that public policy requires that the remedy for negligence should not be pressed to an impracticable extreme. But I am wholly unable to apply this rule in the present case; much more to apply it in the name of public policy. Public policy regards the public good and I am yet to be convinced that the public welfare will be promoted by holding that producers and manufacturers owe no duty to consumers to guard against diseased and poisonous meats and provisions, except in those isolated cases where they happen to sell directly to them.

The remedies of injured consumers ought not to be made to depend upon the intricacies of the law of sales. The obligation of the manufacturer should not be based alone upon privity of contract. It should rest, as was once said, upon "the demands of social justice." The producer should be held responsible for the results of negligent acts which he can readily foresee. There is no analogy between the case where defective material after passing through many hands produces not-to-be-looked-for ill effects. The iron manufacturer who fails to inspect a piece of iron cannot foresee that it will be used in a boiler and cause a ship to sink. But the meat packer who fails to inspect his products for poisonous parasites or ingredients, knows that poison will poison and that the persons to be poisoned through his neglect will be those who eat his products and no one else. The natural, probable and almost inevitable result of his negligence will be injury to the consumer and, in my opinion, every consideration of law and public policy requires that the consumer should have a remedy. If there are no authorities which grant one it is high time for such an authority.

The demurrer to the complaint is overruled with costs, but the defendant within 20 days, upon the payment of costs, may answer over.