Menaker et al., Appellants, *v.* Supplee-Wills-Jones Milk Company.

Argued October 14, 1936.

Be-fore KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD,

PARKER, JAMES and RHODES, JJ.

*Edward W. Watson,* with him *Morris W. Kolander,* for appellants.

*Philip H. Strubing,* with him *Charles E. Kenworthey,* for appellee.

OPINION BY PARKER, J., January 29, 1937:

This is an action in trespass brought to recover damages for injuries alleged to have been suffered by the minor plaintiff as the result of the ingestion of ice cream containing a deleterious foreign substance, and this appeal is from the refusal of the court below to take off a compulsory nonsuit. The action belongs to that class of cases where a claim is made against a manufacturer for impure food purchased from a retail dealer. We are of the opinion that the evidence was sufficient to entitle the plaintiffs to have their case submitted to a jury.

For the purposes of this appeal we are required to consider the evidence in a light most favorable to the plaintiffs. The minor plaintiff, through her brother, purchased an ice cream cone from a dealer, Meyer Adelson. When she started eating the ice cream she noticed that "it did not taste right" and then came upon the hindquarters and tail of a mouse which she actually took into her mouth. She became ill and vomited vio-

lently at intervals for several days. The plaintiff lost weight and it was necessary to secure the advice of a physician. There was considerable evidence tending to show that the mouse was in the mold when it was delivered to the dealer by the defendant. The retail dealer testified that the ice cream which was placed in the cone was what was known as a "top". It was delivered by the defendant to the dealer in such form that it could be placed in the cone without touching the ice cream, and it was intended by the defendant that it would be so handled. The dealer testified: "They [the tops] are packed in paper cartons, and these paper cartons have holes in them, they have round circular holes to allow circulation of air on the inside, and they are packed inside kind of snug, and then there is a piece of gummed paper on top to seal the package, and they are served to us in that way. The different sections are separated by a piece of wax paper." The dealer stated that the cones were kept in a can, that the lid was never removed except when a sale was made and the lid was immediately replaced. The plaintiffs produced other evidence showing that the top in question was smooth when taken from the carton furnished by defendant; that it would not have been in that condition if it had been tampered with; and that it was only the rear of the mouse that was in the mold. The portion of the mouse found and its position in the top were strongly persuasive of the fact that the mouse could not have gotten into the ice cream after it left the manufacturer. Plaintiffs by their testimony also accounted for the care of the cone between the time it was sold and the time it was eaten, intending thereby to preclude any assumption that the mouse got into the ice cream after it left the retail dealer.

In granting the nonsuit the trial judge relied upon the assumption that the plaintiffs had not offered sufficient evidence to show that the manufacturer was re-

sponsible for the presence of the foreign matter in the molds. The appellee also contends that there was no evidence of bodily injury to the plaintiff; in other words, that the evidence showed nothing but fright.

(1) A manufacturer who puts upon the market food intended for human consumption in a sealed bottle or original package is held to represent to each purchaser, even though the purchase is made through a dealer, that the contents thereof are wholesome and suitable for the purpose for which they are sold: *Nock v. Coca Cola Bottling Works,* 102 Pa. Superior Ct. 515, 521, 156 A. 537; *Rozumailski v. Phila. Coca-Cola B. Co.,* 296 Pa. 114, 145 A. 700; *Catani v. Swift & Co.,* 251 Pa. 52, 95 A. 931. "Those engaging in the business of manufacturing or compounding food or beverages for consumption must use a high degree of care to see that the food or beverage is free from foreign or deleterious substances that injuriously affect the user": *Madden v. Great A. & P. Tea Co.,* 106 Pa. Superior Ct. 474, 162 A. 687. The question whether such manufacturer used reasonable care in the preparation of the food or beverage is for the jury.

The defendant concedes, under the authorities cited, that if the plaintiffs proved that the dead mouse was in the ice cream when the defendant delivered the article to the dealer, the defendant's negligence would be for the jury. We believe the concession was properly made for the ice cream was delivered in sealed containers and it was contemplated that the ice cream would be sold just as it was delivered to the retailer. This made the original package rule applicable.

It seems clear to us that the plaintiffs' evidence was, in fact, sufficient to make the question as to whether the part of the mouse was in the mold when delivered to the retailer a question for the jury. All who handled the top from the time it came from the manufacturer were called as witnesses and testified to the manner in which

the top and cone were handled and cared for, so as to rebut any inference that the part of a mouse could have gotten into the mold afterwards. It is significant that only the rear of a mouse was found by the purchaser. It could not have jumped into the mold.

But the appellee insists that there was still a possibility that the mouse was not in the top when the ice cream was delivered to the retail dealer; that is, that the plaintiffs have not excluded all possible causes. It has frequently been held by the appellate courts in this state that only reasonably possible causes must be excluded. "If there was any other cause to which the injury might in equal fairness be attributed, the jury ought not to be permitted to guess which occasioned the injury, but as was said in the case of *Strobel v. Park,* 292 Pa. 200, 207[140 A. 877], the test is whether the circumstances are such as would satisfy a reasonable and well-balanced mind that the accident resulted from the negligence of the defendant. 'It is not necessary for the plaintiff to exclude everything which the ingenuity of counsel may suggest as possibly causing or contributing to an accident': *Gallivan v. Wark Co.,* 288 Pa. 443, 453 [136 A. 223]": *Madden v. Great A. & P. Co.,* supra (p. 480). Also, see *Gable v. Golder,* 116 Pa. Superior Ct. 415, 419, 176 A. 847.

(2) The appellee further urges that the plaintiffs, by their evidence, showed nothing but fright and no physical injury. "There can be no recovery for injuries resulting from fright, or a nervous shock, unaccompanied by physical injuries": *Howarth v. Adams Express Co.,* 269 Pa. 280, 112 A. 536. The rule was applied in the case of *Koplin v. Louis K. Liggett Co.,* 322 Pa. 333, 185 A. 744, to which we will refer later. In the case we are considering, the ice cream did not taste right and a part of the dead mouse was in plaintiff's mouth, and immediately thereafter she was violently ill, not being able to keep anything on her stomach. The physician who

attended her testified: "My diagnosis was first a gastro-intestinal upset, the result of the ingestion of contaminated ice cream, and second, nervous shock." He further stated that the patient lost weight and her tongue was coated and gave the positive opinion that the upset was due to the ingestion of contaminated ice cream. He insisted on cross examination, that the ailment was primarily from a physical cause and not purely of a psychic or nervous origin. The evidence presented facts which should be passed upon by a jury.

We are of the opinion that the facts in this case distinguish it from *Koplin v. Louis K. Liggett Co.*, supra. There a customer in a restaurant noticed a centipede in a spoonful of soup that she was about to take into her mouth, but she did not touch it. She admitted that the soup served her, most of which she had eaten, had no bad taste. She was nauseated but was not actually sick in the sense that she vomited, while the physician who attended her stated that her trouble was more mental than physical. This was in marked contrast to the facts in this case. Here, if we accept plaintiff's evidence, she suffered an actual physical injury by consuming the contaminated article. It was for a jury to determine whether her evidence should be credited.

Judgment reversed and a new trial awarded.