## Simone v. John J. Felin and Company et al. No. 1

*Robert M. Bernstein,* for plaintiff.

*Mancill & Shallow* and *P. F. Newman,* for defendants.

LEVINTHAL, J., June 21, 1939.—Plaintiff was taken seriously ill with trichinosis; hence this action against the packer and the retailer of the infected pork alleged to have caused the illness. The matter is before us upon statutory demurrers to the statement of claim, which was filed in assumpsit. We summarize the statement:

Defendant Felin prepares and dresses meat for sale to the general public in Philadelphia, where defendant Parisse is a butcher. Parisse bought raw pork from Felin and sold five pounds of it to plaintiff's mother. Felin, in selling pork to Parisse, is alleged to have "warranted that the said pork was of merchantable quality, and

sound and fit for household consumption". Parisse, in the sale of the pork, it is averred, made the same warranty. The pork, however, was not merchantable or fit for household consumption because it was infected with trichinæ, which infection existed when it was sold both by Felin and by Parisse. The pork, plaintiff avers, was properly cooked and served to plaintiff, who ate it and became ill.

The question to be determined first, is whether an action of assumpsit for breach of warranty may be brought by the ultimate consumer against the manufacturer or packer.

Impure food cases have been instituted and sustained in both trespass and assumpsit. In the trespass cases, however, the courts have sometimes based recovery upon the theory of a breach of warranty, while the assumpsit actions have occasionally been sustained upon the ground of negligence. The Superior Court in Nock v. Cola-Cola Bottling Works, 102 Pa. Superior Ct. 515, 518 (1931), recognized this apparent confusion:

"There is considerable confusion in the decisions as to the theory of the liability of the defendant in this class of cases. Some of them hold that an action is based upon negligence alone; others that it may be founded on an implied warranty; and still others that where an implied warranty exists, it does not extend to third parties. Undoubtedly, an action in tort could have been brought, but in determining whether or not that form is exclusive, one is confronted by a conflict of authorities which is confusing. The question whether an assumpsit under a contract of implied warranty of fitness, etc., may be maintained is, in many instances, so closely related to the question of negligence that the decisions are not always susceptible of clear classification. In 26 C. J. 783, it is stated that the general rule is, that in all sales of food or beverages for immediate consumption by a dealer, there is an implied warranty of fitness or wholesomeness for the consumer."

In our opinion, the Nock case may be regarded as authority for the present action. There the court affirmed a judgment against the manufacturer in an action of assumpsit brought by a plaintiff who had purchased the defective beverage from an intermediate retailer. A reason stated by the court in the course of its opinion, that the objection as to the form of action had not been diligently raised in the court below, was merely an added ground for the decision and not the sole basis of it. The case of Catani v. Swift & Co., 251 Pa. 52 (1915), also, has frequently been cited as authority for the proposition that an assumpsit action in a case like the present is proper. That case was in trespass, but the opinion concerns itself almost entirely with warranties and their breach.

It is true that the present action could have been founded in tort: Catani v. Swift & Co., supra; Rozumailski v. Philadelphia Coca-Cola Bottling Co., 296 Pa. 114 (1929) ; Menaker et al. v. Supplee-Wills-Jones Milk Co., 125 Pa. Superior Ct. 76 (1937) ; A. L. I. Restatement of Torts (1934) § 395. But no case in our jurisdiction holds the tort action exclusive or forbids an action of assumpsit. On the contrary, the few relevant cases in Pennsylvania seem to allow plaintiff his choice of remedies. See, in addition to the Nock and Catani cases, supra, Tavani v. Swift & Co., 262 Pa. 184, 187 (1918). (In the Tavani case the court wrote: "The action being in trespass for negligence and not for breach of warranty, the evidence was competent and sufficient to sustain the conclusion of the jury that defendant omitted no precaution or duty it owed plaintiff." It appears to us that this statement recognizes the possibility of a contract action as well as a trespass action. Of course, we do not decide at this state of the proceedings whether in this assumpsit action the defendant may absolve itself by proving that it was not negligent. That is a question to be decided at the trial.) There is a divergence of

authority among other jurisdictions, with perhaps a slight majority not permitting the contract action. See the cases collected in 111 A. L. R. 1239, 1251 (1937), and the annotations there cited. However, among the cases there is respectable authority sustaining actions for breach of warranty. See, e. g., Davis v. Van Camp Packing Co., 189 Iowa 775, 176 N. W. 382 (1920), and The Ward Baking Co. v. Trizzino, 27 Ohio App. 475, 161 N. E. 557 (1928).

Defendant's objection rests largely upon the concept of privity of contract. But as Chief Judge Cardozo remarked some years ago in Ultramares Corp. v. Touche et al., etc., 255 N. Y. 170, 180 (1931), "the assault upon the citadel of privity is proceeding in these days apace." Early impetus was given to that assault by Judge Cardozo's decision in MacPherson v. Buick Motor Co., 217 N. Y. 382, 393 (1916), a tort case, but marked by an attitude which has significance for us in the consideration of this case. Judge Cardozo wrote that "there is nothing anomalous in a rule which imposes upon A, who has contracted with B, a duty to C and D and others according as he knows or does not know that the subject-matter of the contract is intended for their use." We find no reason why that statement should be less applicable to warranties than to the field of torts. Actions upon warranties, it ought to be remembered, are tortious in origin, developing from actions for deceit, the principal precursor of all of assumpsit. See Ebbert et al. v. Philadelphia Electric Co., 330 Pa. 257, 268 (1938).

The MacPherson opinion also contains the following at page 391:

"It [defendant] knew also that the car would be used by persons other than the buyer. This was apparent from . . . the fact that the buyer was a dealer in cars, who bought to resell. The maker of this car supplied it for the use of purchasers from the dealer just as plainly as the contractor in *Devlin v. Smith* supplied the scaffold for use by the servants of the owner. The dealer was indeed the

one person of whom it might be said with some approach to certainty that by him the car would not be used. Yet the defendant would have us say that he was the one person whom it was under a legal duty to protect. The law does not lead us to so inconsequent a conclusion. Precedents drawn from the days of travel by stage coach do not fit the conditions of travel to-day."

Read "pork" for "car" and the language just quoted might be written to decide this case. The pork obviously was to be eaten by someone other than the dealer, and a warranty of fitness for consumption was of vastly greater interest to the consumer than to the dealer. To confine the warranty to him is to ignore utterly its purpose. "Precedents drawn from the days of" slaughter and sale of meats by neighborhood farmers "do not fit the condition of" industrialized packing and distribution prevalent "today". The rule urged by defendant is as anachronistic as the tort case of Winterbottom v. Wright, 10 M. & W. 109, 152 Eng. Repr. 402 (1842), cited by Judge Cardozo, or the early cases refusing to enforce third-party beneficiary contracts. Indeed, the warranty here might be regarded as a third-party beneficiary contract, since it was primarily for the benefit of the consumer. Such contracts are now generally enforced in this State: McClelland et al. v. New Amsterdam Cas. Co., 322 Pa. 429 (1936) ; Commonwealth v. Great American Indemnity Co., 312 Pa. 183 (1933).

It is contended by defendant that the principle we apply here is properly applicable only where the defective article remains in the original container from the time it leaves the manufacturer until it reaches the consumer. One reason for the original container rule is suggested in the Nock case, supra: that the purchaser cannot examine the article for himself when it is in a sealed container. It seems to us that in this case, too, the same reason is applicable, because trichinæ in pork cannot be detected by any inspection which the purchaser or consumer can make. So far as he is concerned, the infected

pork might just as well be in a sealed tin. Another ground for the original container doctrine is the likelihood that any impurity in food which reaches the consumer in the original container was there when the food left the manufacturer. In the present case there is the same assurance that the trichinæ were in the pork when Felin, the manufacturer, sold it to Parisse, because it is so pleaded, and it is a matter of common scientific knowledge that trichinæ do not enter pork after the animal has been slaughtered. Therefore, if it is proved at the trial that the pork was infected when eaten by plaintiff, the trichinæ must have been in it before Felin sold it, just as the impurities in the Coca-Cola cases must have been in the bottles before they were capped.

This demurrer might be dismissed without more discussion, upon the vigorous dictum of Mr. Justice, later Chief Justice, Frazer in Catani v. Swift & Co., supra, at pages 56, 57, where he wrote:

"The contention that the warranty did not extend to subsequent purchasers after the meat passed through the hands of middlemen cannot be sustained. . . .

" 'The remedies of injured consumers ought not to be made to depend upon the intricacies of the law of sales. The obligation of the manufacturer should not be based alone upon privity of contract. It should rest, as was once said, upon "the demands of social justice." ' "

What has been said above was directed toward Felin, but of course it applies a fortiori to Parisse. If the packer is liable to purchasers from the retailer and to consumers, the retailer is obviously liable for breach of warranty: West v. Katsafanas, 107 Pa. Superior Ct. 118 (1932). The fact that plaintiff herself was not the purchaser and did not technically stand in privity of contract with Parisse does not prevent recovery from him.

The questions of law raised by defendants' affidavits of defense are resolved in favor of plaintiff and against defendants, with leave to defendants to file supplemental affidavits of defense within 15 days.