[S. F. No. 16226.   In Bank.—September 6, 1939.]

HERBERT KLEIN et al., Appellants, v. DUCHESS SANDWICH COMPANY, LTD. (a Corporation), et al., Respondents.

Elliott Johnson and D. W. Brobst for Appellants.

O'Connor, Fitzgerald & Moran and Harold H. Cohn for Respondents.

Macdonald, Schultheis & Pettit and Lee G. Paul as *Amici Curiae*, on Behalf of Respondents.

HOUSER, J.—The action upon which the instant appeal is founded was for the recovery of a judgment for damages, which were alleged to have accrued to the plaintiffs by reason of the fact that one of them assertedly suffered an illness which resulted from the eating of a sandwich which was manufactured by one of the defendants and subsequently sold through the defendant restaurateur to one of the plaintiffs.

The following are among the essential facts which appear from the record that has been filed with the clerk of this court, to wit: The plaintiffs, respectively, are husband and wife; the defendant Duchess Sandwich Company is a limited corporation, engaged in the business of manufacturing various kinds of sandwiches and thereafter selling them in wholesale lots to retailers, who, in turn, sell them to consumers. The defendant Kilpatrick is the owner and operator of the defendant Happy Daze Buffet, which is engaged in a restaurant business, which includes the furnishing of sandwiches for consumption by the general public. On July 21, 1936, the two plaintiffs went in their automobile to the place of business that was then being conducted by defendant Kilpatrick, and then and there, at the direction of the wife, the husband purchased a ham and cheese sandwich, which was wrapped in waxed paper and sealed by two metal clamps, which had been

placed thereon by the defendant Duchess Sandwich Company. The latter defendant had delivered and sold the said sandwich to defendant Kilpatrick about one hour before he sold the same to the plaintiffs. In that regard, it appears that the practice pursued by the said defendants was that—with the exception of cheese sandwiches—on the day which followed a sale and delivery of sandwiches, the sandwich company replaced with fresh ones all sandwiches which had not been sold to the public by defendant Kilpatrick. In other words, each day the unsold sandwiches, other than those made with cheese, were exchanged for fresh ones; and the unsold cheese sandwiches were replaced every second day following their sale to the retailer. After the husband had taken the ham and cheese sandwich to his wife, who had remained in the automobile in front of defendant Kilpatrick's place of business, she removed the seals which secured the waxed paper within which the sandwich had been wrapped. Thereupon, she removed the wrapper from the sandwich and ''took a bite'' of the sandwich and swallowed it. According to her testimony, the sandwich had ''a peculiar taste''. On immediate examination of the remainder of the sandwich, she discovered that it ''was crawling with worms'', or ''maggots''. She became ill and vomited. Shortly thereafter, she went to her home, where she again vomited. Immediately thereafter, and as a result of that incident, the plaintiff wife was confined to her bed for four days, following which and by direction of her doctor, she was sent to a rest sanitarium, where she continued ill for a period of about two weeks. After again returning to her home, she remained ill for an additional period of about six months. The husband and wife thereupon commenced the instant action for a recovery of a judgment for the damages which they thus had sustained. On the trial thereof, her attending physician testified that the wife's condition was characterized by ''a marked nervousness, with an obsession about eating''; that ''she had an obsession against food . . . ''; and that at the time of trial, her condition was ''a mental condition'', which, in his opinion, should be treated by a physician accordingly.

Predicated upon the foregoing facts, on motion made by the defendants, the trial court directed the jury to return a verdict in favor of the defendants. It is from the ensuing judgment that the instant appeal has been taken. No briefs

have been filed by the respondents other than the Duchess Sandwich Company.

In their complaint herein, plaintiffs pleaded two separate causes of action: In substance, (1) that the defendants were guilty of negligence; and (2) that the defendants had breached an implied warranty that the sandwich was fit for human consumption.

However, without insisting that, in appropriate circumstances, an action for negligence would not lie against a manufacturer, the defendant Duchess Sandwich Company urges the point that on the trial of the action no evidence was adduced from which properly it might be deduced that the said defendant had been guilty of any negligence in the premises. But in that regard, notwithstanding undisputed evidence to the effect that in the manufacture of sandwiches, generally, care had been exercised by the said defendant to prevent the happening of such an incident as befell one of the plaintiffs in the instant case, nevertheless, from the admitted fact that cheese-worms or "maggots" were present on or in the sandwich that was prepared by the defendant Duchess Sandwich Company and thereafter sold by defendant Kilpatrick to one of the plaintiffs, it becomes undeniable that at some time or place some person had failed to exercise the proper degree of care to prevent houseflies or cheese-flies from depositing their eggs on some of the material from which the sandwiches were manufactured, or the subsequent infestation of the particular sandwich in question by cheese-worms or "maggots". And evidence regarding the manner in which the respective businesses of the two defendants were conducted certainly admits of the inference that the negligence existed on the part of the defendant Duchess Sandwich Company rather than on the part of defendant Kilpatrick. To illustrate the possibility of negligence of the one, as well as to exculpate the other, it may be remembered that the evidence disclosed the fact that after the sandwiches had been prepared at the place of business of defendant sandwich company, they were wrapped in waxed paper, and that the ends of the wrapper were folded and then sealed with metal clamps. Apparently neither cheese-worms nor "maggots" are indigenuous to either cheese or ham; and, since the evidence discloses the fact that "maggots" are the larvae which in two days ordinarily develop from eggs which have been deposited

by house-flies, or cheese-flies, it would seem likely that the filling of the sandwich had been thus exposed before the sandwich had been wrapped,—especially in view of evidence to the effect that the sandwich had been in the possession of defendant Kilpatrick for a period of approximately one hour only before it was sold to the plaintiffs. In such circumstances, the conclusion that the unfortunate incident was caused by the lack of proper care on the part of the defendant Duchess Sandwich Company is but natural and one which is deducible from the facts in the case. Its contention that the evidence was sufficient to justify the rendition of a directed verdict in favor of the defendants, and the judgment thereon, cannot be sustained.

It is next urged by respondent Duchess Sandwich Company that no implied warranty as to the quality of the food existed in favor of the plaintiffs. In that regard, section 1735, Civil Code, supplies the basic law for a conclusion to the contrary. In effect, it is therein provided that such a warranty exists: ''(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose.''

However, the respondent Duchess Sandwich Company, in effect, contends that the implied warranty created by the statute contemplates the existence of a warranty running only from an immediate seller to an immediate buyer. It is clear that were this contention to be upheld in the instant case, the resultant ruling would be that no recovery could be had against the manufacturer on the warranty theory because there was no privity of contract between either of the plaintiffs on the one hand, and the manufacturer Duchess Sandwich Company on the other, by reason of the fact that defendant Kilpatrick—and not the defendant manufacturer—was the ''immediate seller'' in the transaction involved. The respondent sandwich company further contends, in effect, that, since by the language of the statute the warranty ran only in favor of the ''buyer'', and inasmuch as the husband was such immediate ''buyer'', no privity of contract existed between the wife and the ''seller'',—and that, consequently, no liability on the implied warranty theory was created in favor of the wife.

In view of the fact that the question concerning a manufacturer's liability to an ultimate purchaser or consumer on a warranty as to the fitness of food manufactured by it heretofore has not been passed upon directly by this court, and because of the fact that in some of the other jurisdictions which also have adopted the Uniform Sales Act, of which section 1735, Civil Code, is a part, the several courts recently have given considerable attention to the problem, it is deemed expedient at this time, in the light of those authorities, to give consideration to the question thus presented.

In *Rachlin* v. *Libby-Owens-Ford Glass Co.*, (C. C. A., 2d Dist.), 96 Fed. (2d) 597, 600, the court commented upon the fact that although the orthodox rule requires privity of contract between the parties in an action for breach of warranty, "Several courts . . . have recognized an exception to the general doctrine in the case of medicines and foodstuffs, and have held a manufacturer to warrant to the ultimate consumer that the article is fit for human consumption. . . ."

In volume 1, Uniform Laws Annotated, pages 118, 119, it was said: "Because there is no privity of contract between the parties, no action will live [lie] for breach of an implied warranty on the sale of foodstuffs, except between the immediate parties to the sale [citing cases] . . . It has, however, been declared that *foodstuffs* do not fall within the rule of want of privity between the manufacturer and ultimate consumer, with a retail dealer intermediate. *Hertzler* v. *Manshum*, (1924) 228 Mich. 416 [200 N. W. 155], . . . *Ward Baking Co.* v. *Trizzino*, (1928) 27 Ohio App. 475 [161 N. E. 557], . . ." (Emphasis added.)

Likewise, in Williston on Sales, volume 1, page 489, the author makes the following comment: "The general rule that warranties do not run in favor of any but an immediate purchaser has been held applicable in a number of cases where food has been sold to a subpurchaser. Several recent cases, however, have imposed the absolute liability of a warrantor on such a manufacturer in favor of the ultimate purchaser." (Citing among other authorities the cases entitled *Dothan Chero-Cola Bottling Co.* v. *Weeks*, 16 Ala. App. 639 [80 So. 734]; *Davis* v. *Van Camp Packing Co.*, 189 Iowa, 775 [176 N. W. 382, 17 A. L. R. 649]; *Parks* v. *C. C. Yost Pie Co.*, 93 Kan. 334 [144 Pac. 202, L. R. A. 1915C, 179]; *Ward* v. *Morehead City Seafood Co.*, 171 N. C. 33 [87 S. E. 958];

*Catani* v. *Swift & Co.,* 251 Pa. 52 [95 Atl. 931, L. R. A. 1917B, 1272]; *Mazetti* v. *Armour & Co.,* 75 Wash. 622 [135 Pac. 633, Ann. Cas. 1915C, 140, 48 L. R. A. (N. S.) 213]; *Flessher* v. *Carstens Packing Co.,* 93 Wash. 48 [160 Pac. 14].)

In the case entitled *Ward Baking Co.* v. *Trizzino,* 27 Ohio App. 475 [161 N. E. 557, 559, 560], the plaintiff purchased a cake from a retail grocer. The cake was wrapped in waxed paper and bore the name of the baker (Ward Baking Co.) on the outside of the wrapper. As the plaintiff was eating some of the cake he swallowed a needle which had been imbedded in its texture, and an action thereafter was brought for injuries which allegedly had resulted to him from swallowing the needle. The complaint was predicated in part upon an implied warranty of the baking company as to "the wholesomeness and freedom from foreign and dangerous substances" of the cake. It was contended by the said company that there was no contractual liability—in that no privity existed between the plaintiff and the defendant baking company. After commenting on the fact that the authorities were conflicting on the question thus presented, the court said: "The groceryman, who is in effect merely a distributing medium for the articles of food furnished by the Baking Company, and the Baking Company, having full knowledge of that fact, dealt with each other and entered into a contractual relationship for the benefit of the public, which is the ultimate consumer. In other words, this contract between the groceryman and the Ward Baking Company to all intents and purposes was a contract entered into *for the benefit of a third party, to wit, the ultimate consumer.* . . . Considerations of public policy demand that the utmost care and caution be exacted from the manufacturer of articles of food, who not only manufactures the same, but causes the same to be delivered to grocerymen, bakeries, and so forth, for the purpose of general distribution and sale to members of the general public. The consumer has a right to rely upon the implied representation of the Baking Company that these articles bearing its name are not only free from injurious substances, but are fit for consumption as food." (Emphasis added.)

And in the case entitled *Anderson* v. *Tyler,* 223 Iowa, 1033 [274 N. W. 48, 50], it was held that the duty of a manufacturer is "to see to it that food products put out by him are wholesome"; that the implied warranty that such prod-

ucts were fit for use ran with the sale, and to the public, for the benefit of the consumer, rather than to the wholesaler or retailer; and that privity of contract was not controlling.

In *Dow Drug Co.* v. *Nieman,* 57 Ohio App. 190 [13 N. E. (2d) 130, 135], it was said, "That there is a liability upon a negligent manufacturer who sells articles knowing they are intended for resale to subpurchasers is clear from the trend of modern authorities. The only controversy is as to the basis of the liability, some holding that the implied warranties are made for the benefit of the subpurchasers and form the basis of liability, and others holding that there must be proof of negligence to impose a liability. [Citing cases.]"

Likewise, in the case entitled *Hertzler* v. *Manshum,* 228 Mich. 416 [200 N. W. 155, 156], which was an action against both the miller and a retailer of flour, for death caused by the presence of arsenate of lead in the said flour, which had been used in the preparation of food eaten by the deceased, the court said: "Defendant Hanchett contends for nonliability under the general rule that the manufacturer of an article or commodity sold a retail dealer is not liable to a subsequent purchaser upon an implied warranty for injuries due to defects or impurities therein. This general rule is based on want of contractual relation. *But foodstuffs do not fall within the rule of want of privity between the manufacturer and ultimate consumer,* with a retail dealer intermediate. . . . The implied warranty, so called, reaching from the manufacturer of foodstuffs to the ultimate purchaser for immediate consumption is in the nature of a representation that the highest degree of care has been exercised, . . . We are fully persuaded that the manufacturer of foodstuffs is liable to respond in damages to the purchaser thereof, for immediate consumption, injured by a foreign poisonous substance therein; that the retail dealer may be joined as a party defendant; and the liability of both may be counted on in tort for negligence *or breach of implied warranty as mentioned.*" (Emphasis added.)

And in *Davis* v. *Van Camp Packing Co.,* 189 Iowa, 775 [176 N. W. 382, 17 A. L. R. 649], it was held that one seeking damages from a food manufacturer for injuries caused by eating unwholesome food was not compelled to elect between implied warranty and negligence as a ground for recovery. In that case also it was contended by the defendant packing

company that there could be no warranty, express or implied, because there was no privity of contract between the defendant and plaintiff. There the court said: " 'The remedies of injured consumers ought not be made to depend upon the intricacies of the law of sales. The obligation of the manufacturer should not be based alone upon privity of contract. . . . every consideration of law and public policy require that the consumer should have a remedy. . . . ' . . . In the case of *Parks* v. *C. C. Yost Pie Co.,* 93 Kan. 334 [144 Pac. 202, L. R. A. 1915C, 179], . . . the court says: 'A manufacturer or dealer who puts human food upon the market for sale or for immediate consumption does so upon an implied representation that it is wholesome for human consumption. . . . ' . . . In *Boyd* v. *Coca-Cola Bottling Works,* 132 Tenn. 23 [177 S. W. 80] . . . the court said: ' . . . Some of the cases place the liability on the grounds heretofore stated; others place it on pure food statutes; others say there is an implied warranty when goods are dispensed in original packages, which is available to all damaged by their use; and another case says that the liability rests upon the demands of social justice. . . . ' . . . We are of the opinion that the duty of a manufacturer to see to it that food products put out by him are wholesome, and the implied warranty that such products are fit for use runs with the sale, and to the public, for the benefit of the consumer, rather than to the wholesaler or retailer, and that *the question of privity of contract in sales is not controlling,* and does not apply in such a case." (Emphasis added.)

Also, the case entitled *Mazetti* v. *Armour & Co.,* 75 Wash. 622 [135 Pac. 633, Ann. Cas. 1915C, 140, 48 L. R. A. (N. S.) 213], although decided prior to the time the Uniform Sales Act became a part of the law of the state of Washington, frequently has been cited in the later cases dealing with the question here being considered. (See *Baxter* v. *Ford Motor Co.,* 168 Wash. 456 [12 Pac. (2d) 409, 411, 15 Pac. (2d) 1118, 88 A. L. R. 521]; *Stanfield* v. *F. W. Woolworth Co.,* 143 Kan. 117 [53 Pac. (2d) 878, 881].) In the Mazetti case the defendant meat packing company was sought to be held liable in an action brought by a middleman who had purchased canned tongue from the former, some of which the plaintiff had sold to a patron. It was alleged that the tongue was foul and poisonous. In discussing the question of liability of

the meat packer, the court said: "It has been accepted as a general rule that a manufacturer is not liable to any person other than his immediate vendee; that the action is necessarily one upon an implied or express warranty, and that without privity of contract no suit can be maintained; that each purchaser must resort to his immediate vendor. To this rule certain exceptions have been recognized: (1) Where the thing causing the injury is of a noxious or dangerous kind. (2) Where the defendant has been guilty of fraud or deceit in passing off the article. (3) Where the defendant has been negligent in some respect with reference to the sale or construction of a thing not imminently dangerous. . . . Another exception—the doctrine is comparatively recent—is referable to the modern method of preparing food for use by the consumer, and the more general and ever-increasing use of prepared food products. The following are among the more recent cases holding that the ultimate consumer may bring his action direct against the manufacturer: *Meshbesher* v. *Channellene Oil & Mfg. Co.*, 107 Minn. 104 [119 N. W. 428, 131 Am. St. Rep. 441]; *Tomlinson* v. *Armour & Co.*, 75 N. J. L. 748 [70 Atl. 314, 19 L. R .A. (N. S.) 923]; *Salmon* v. *Libby, McNeill & Libby*, 219 Ill. 421 [76 N. E. 573]; *Haley* v. *Swift & Co.*, 152 Wis. 570 [140 N. W. 292]; *Watson* v. *Augusta Brewing Co.*, 124 Ga. 121 [52 S. E. 152, 1 L. R. A. (N. S.) 1178, 110 Am. St. Rep. 157]; *Ketterer* v. *Armour & Co.*, (D. C.) 200 Fed. 322. . . . Although the cases differ in their reasoning, all agree that *there is a liability in such cases irrespective of any privity of contract in the sense of immediate contract between the parties. . . . Our holding is that, in the absence of an express warranty of quality, a manufacturer of food products under modern conditions impliedly warrants his goods when dispensed in original packages, and that such warranty is available to all who may be damaged by reason of their use in the legitimate channels of trade.*" (Emphasis added.)

And in the case entitled *Menaker* v. *Supplee-Wills-Jones Milk Co.*, 125 Pa. Super. 76 [189 Atl. 714, 715], it was held that: "A manufacturer who puts upon the market food intended for human consumption in a sealed bottle or original package is held to represent *to each purchaser*, even though the purchase is made through a dealer, that the contents thereof are wholesome and suitable for the purpose for which

they are sold. *Nock* v. *Coca Cola Bottling Works,* 102 Pa. Super. 515, 521 [156 Atl. 537] ; *Rozumailski* v. *Philadelphia Coca-Cola B. Co.,* 296 Pa. 114 [145 Atl. 700] ; *Catani* v. *Swift & Co.,* 251 Pa. 52 [95 Atl. 391, L. R. A. 1917B, 1272]." (Emphasis added.)

The question here under consideration also has been the subject of review in the various law journals. For comments, see: 42 Harvard Law Review, 417; 46 Harvard Law Review, 162; 52 Harvard Law Review, 328; 23 California Law Review, 621. (See generally: 17 A. L. R. 709; 105 A. L. R. 1511; 111 A. L. R. 1251.)

It will be seen from a reading of the foregoing authorities that they are not in entire accord, one with the other, as to the exact reasoning employed in holding a manufacturer liable on a warranty theory, where an action has been brought by an ultimate purchaser or consumer—with a retail dealer intermediate—for injuries resulting from the eating of unwholesome food. Manifestly, however, the factor of public policy affords a background for these decisions. Many statutes have been enacted in recent years which have had for their purpose the safeguarding of the public health, such as the pure food and drug acts, the regulation of milk and dairy products, etc., the aim and purpose of which enactments are that, in the interest of the public welfare, only wholesome food may be sold for human consumption. (*Stanfield* v. *F. W. Woolworth Co.,* 143 Kan. 117 [53 Pac. (2d) 878, 881].) As hereinbefore has been said, the remedies of an injured consumer of unwholesome food ought not to be made to depend "upon the intricacies of the law of sales", and the warranty of the manufacturer to such consumer should not be made to rest solely on "privity" of contract. (*Ketterer* v. *Armour & Co.,* (S. D., N. Y. 1912) 200 Fed. 322, 323.)

■ It should at once be apparent that food which is covered with "maggots" is not wholesome, nor fit for human consumption; and if, as the evidence in this case discloses to be the fact, one of the plaintiffs partook of a sandwich which was thus infested, and for that reason became ill, the general provisions of the statute, together with the adjudicated cases with reference thereto, supply abundant authority for the affirmation of a judgment for damages in their favor arising from such a cause, either on a theory of negligence or on that of the implied warranty referred to in section 1735, Civil

Code. In adopting the statute here concerned as a part of the Uniform Sales Act, it was the clear intent of the legislature that, with respect to foodstuffs, the implied warranty provision therein contained should inure to the benefit of any ultimate purchaser or consumer of food; and that it was not intended that a strict "privity of contract" would be essential for the bringing of an action by such ultimate consumer for an asserted breach of the implied warranty.

Although authorities to the contrary of the conclusion herein reached have imposed a strict privity of contract on a purchaser or consumer of assertedly unwholesome food as an essential requisite for the bringing of an action on the implied warranty theory, nevertheless, the rulings made in the authorities herein cited are based on sound principles,— affording as they do an adequate remedy for injuries which may result from the eating of unwholesome food by an ultimate consumer who, under modern economic conditions, almost of necessity, must purchase many items of food prepared in original packages by the manufacturer and intended for the consuming public, although marketed through an intermediate dealer.

The second contention made by the respondent Duchess Sandwich Company,—that recovery was precluded by the plaintiff wife because she was not the "buyer" within the meaning of the statute and that, consequently, there was no "privity of contract" between the "seller" and the wife—in effect, has been answered by the ruling hereinbefore made. However, on analyzing the question,—in the light of the construction placed upon the statute by the respondent sandwich company—it is evident that, should such contention be upheld, the result would be that should a father or a mother of an infant child purchase from a grocer a bottle of unwholesome milk, or other deterious food, for consumption by the child and, ensuing from its consumption thereof, the child become ill,—no damages therefor by reason of a breach of an implied warranty would be recoverable. It would seem improbable that, in adopting the act, the legislature ever intended or even contemplated that such a construction would or could be placed upon the language of the section referred to herein. Moreover, in the instant case, the evidence shows that the wife "sent" her husband into the restaurant for the express purpose of purchasing for her the sandwich of which she thereafter partook, and thus, in effect, she was the

"buyer" within the terms of the statute. Furthermore in the case of *Jensen* v. *Berris*, 31 Cal. App. (2d) 537 [88 Pac. (2d) 220], the plaintiff, who allegedly sustained injuries from the eating of unwholesome food in a restaurant—in company with other members of a card club—was allowed a recovery as against the restaurateur on the warranty of the fitness of the food, although she did not pay for the food herself,—the court holding that there was sufficient privity of contract to support the warranty. And in the case entitled *Dryden* v. *Continental Baking Co.*, 11 Cal. (2d) 33 [77 Pac. (2d) 833], the plaintiff wife was injured by the eating of bread purchased by her husband through a retail dealer, and although it was held that her recovery was in tort, where negligence on the part of the baking company was proven,—nevertheless, in answer to the contention of the defendant baking company that no recovery should have been allowed on the implied warranty theory because there was lack of privity of contract, the court observed that, "assuming that privity is an essential element of such an action, it might well be urged that the wife . . . was a third party beneficiary of the contract".

However, as hereinbefore has been held, the warranty as to the fitness of foodstuffs intended for human consumption was not intended to be solely for the benefit of the immediate "buyer", but was intended to be for the benefit of the ultimate consumer,—the existence of privity of contract not being essential in an action brought by such consumer on the warranty theory. To allow a recovery by such third person, who may have consumed unwholesome food purchased by another, would not impose a greater burden on the manufacturer or on the immediate seller of the food than would be thus imposed if the original purchaser had been injured by reason of the consumption thereof—since the warranty extended to *every consumer* is that the food is fit for the purpose for which it was intended, namely, for human consumption.

In the instant case, it follows that the jury should not have been directed to return its verdict in favor of the defendants.

The judgment is reversed.

Shenk, J., Curtis, J., Pullen, J., *pro tem.*, and Spence, J., *pro tem.*, concurred.

Rehearing denied.