GIBBENS & GORDON, INC., v. CRANE COMPANY

(December 3, 1930. Opinion and Decree.)
(January 5, 1931. Rehearing Refused.)

Henry & Cooper and A. M. Suthon, of New Orleans, attorneys for plaintiff, appellee.

Fred G. Veith, of New Orleans, attorney for defendant, appellant.

HIGGINS, J. The plaintiff sued the defendant for damages for an alleged breach of contract resulting in the plaintiff incurring certain expenses for making the necessary changes in material furnished by defendant to make it comply with the ruling of the United States Steamboat Inspection Service. The petition alleged that the defendant had warranted that the material would be accepted by the steamboat inspectors, who rejected it after their inspection. The defense is that the rejection of the material was unwarranted because the Board of Supervising Inspectors had approved the Crane lap joint, which was the cause of the rejection of the material, by resolution in 1907 to the effect that the committee could see no objection to the Crane lap joint, when constructed according to the requirements of section 19 of rule 2. There was judgment in favor of the plaintiff and defendant has appealed.

A narration of the facts as we appreciate the evidence is as follows:

Plaintiff had a contract for the repair of a steamboat which was used by a railroad in a continuous service of transferring cars across the Mississippi river between Vidalia, Louisiana, and Natchez, Mississippi. This work consisted of the changing of all the boilers and other appurtenances and installing new boilers, and had to be done while the boat was in continuous operation, two boilers being used while two others were installed. On April 2, 1926, the plaintiff, in writing, ordered certain pipe bends and similar material, which it used in the installation of the new boilers on the boat. The plaintiff's order contained the following provision:

"You are to furnish us with certificate showing all materials in the above have been manufactured and tested as required and will be accepted by the United States Steamboat Inspection Service."

Defendant shipped the material from its Birmingham factory in apparent compliance with the order and the plaintiff used it in installing the boilers. The defendant furnished the following certificate in connection with the shipment:

"CERTIFICATE OF TEST.

"I hereby certify that the following material shipped to Crane Company, Birmingham, Alabama, account their order, B. A. 8301 and 8498 Atlanta orders 296 and 240 was manufactured and tested in accordance with U. S. Steamboat Inspection Service and that same stood test satisfactorily.

"Furthermore that same was tested in accordance with National Tube Company's specifications A-53-24 A.S.T.M. and that same stood test satisfactorily."

On June 5, 1926, two inspectors of the United States Steamboat Inspection Service inspected the plaintiff's work and material used therein, and on June 7, 1926,

wrote plaintiff informing it that the flanges on the steam pipes connecting with the new boilers were not approved and could not be used until the flanges had been changed and installed in accordance with the general rules and regulations of the Board of Supervising Inspectors (rivers), edition of April 4, 1924, rule 2, section 27. In short, the rejection was due to the flanges being flexible, instead of rigid on the pipe. Immediately upon receipt of this letter the plaintiff's representative notified the defendant's representative of the rejection and called his attention to the warranty that the material would be accepted by the U. S. Steamboat Inspection Service. On the same day, or the day following, the representatives of plaintiff and defendant held a conference with Captain Cobb, one of the inspectors, who explained that, under the existing regulations, the flanges attached to the pipe had to be made rigid in one of the three methods allowed in the general rules and regulations, which he showed them and of which he furnished a copy. The defendant's representative, apparently convinced of the correctness of the ruling, suggested that the plaintiff return the material to the Birmingham factory and that new material would be furnished to comply with the regulations. Thereupon the plaintiff's representative explained that, due to the fact that the boat had to remain in continuous operation, it was impossible to send back the material, and that the Crane lap flanges would have to be made rigid without disassembling and reinstalling them. The defendant's representative did not protest against this being done and plaintiff, at an expense of $582.04, the amount of this suit, made the flanges rigid by welding them to the pipe. The work was then reinspected and approved. On July 19, 1926, plaintiff presented its bill and defendant refused to pay. This suit was then filed.

The Crane lap flange is a special, patented article which fits loosely at the end of a piece of pipe, so that two such flanges when the pipe ends are joined together form the Crane lap joint.

It appears that, sometime after the work was completed and approved, the defendant obtained a ruling from the supervising inspector-general at Washington to the effect that the Crane lap joint which was formed by the Crane lap flange, had been approved by resolution of the board in 1907 and that the United States Local Inspectors, therefore, erred in rejecting the work.

There are two questions involved in this case, namely:

First: Whether the warranty of the defendant covered an unauthorized and improper rejection of the joints formed by the Crane lap flanges, and,

Second: If not, whether the rejection of such joints by the local inspectors was duly authorized by law, i. e., whether the ruling of the local inspectors, or the supervising inspector general was in accordance with law.

We shall discuss these issues in the above order.

The plaintiff contends that the language of the certificates should be construed as an absolute warranty and that all materials furnished by the defendant would be accepted, as a fact, by the United States Steamboat Inspection Service. Defendant contends that the language of the certificate should be construed as a limited warranty covering only a test as to tensile strength of the material.

From the nature of the businesses carried on by plaintiff and defendant, it is apparent to us that they were both familiar with the fact that the work and material in question required the approval of the inspectors before the boat would be permitted to operate. In order to obviate any trouble or difficulty, as far as materials were concerned, the plaintiff placed the warranty clause, above recited, in its written order. The defendant, without in any manner indicating that this stipulation of warranty was unsatisfactory to it, furnished the material and issued its own certificate of warranty, which, while somewhat differently worded, appears intended for the same purpose, which the plaintiff had in mind, i. e., insuring the approval of the inspectors in due course.

If there is any ambiguity in the stipulations of the certificate of warranty of the defendant, the doubt must be resolved against it, under the well established rule of the interpretation of contracts that all ambiguities are construed against the party who writes them. In this connection we note that after the inspection on June 5, 1926, the inspectors wrote a letter to the plaintiff on June 7, 1926, and set up the specific reasons for the rejection of the Crane lap joint and the particular rules that they considered applicable. Plaintiff immediately notified the defendant, resulting in a conference between the representatives of each and the inspectors. The inspectors apparently convinced defendant's representative that their ruling was correct because he did not make any suggestion that the plaintiff should appeal from the ruling of the local inspectors, as either plaintiff or defendant would have had a right to do, but stated that if the material were returned to the Birmingham factory, satisfactory material would be furnished in lieu thereof. The resolution of the Board of Supervising Inspectors, said to have been adopted during the year of 1907 and approving the Crane lap joint, was not contained in the pamphlet containing the rules and regulations of the board, and no mention of it was in anywise made. The representative of the defendant company, even after the second conference with the local inspectors and plaintiff, did not inform them that such a resolution was in existence. It was only after all of the work was done, whereby the nonrigid feature of the flange was made rigid, to comply with the requirements of the local inspectors, that any mention was made of the fact that the Crane lap joint was approved by the alleged resolution of the board in 1907.

The conduct of the defendant's representatives, after having had the conferences with the local inspectors, in requesting that the plaintiff return the material, in stating that other material would be furnished in lieu thereof, and in not mentioning the alleged resolution of 1907 and in not suggesting that an appeal be taken from the ruling of the local inspectors, indicates that the representatives of the defendant company considered that the stipulations of the certificates were an absolute warranty that the material would be approved by the inspectors in fact.

We, therefore, find that the plaintiff must prevail and it is entitled to recover the damages claimed.

In view of our opinion on the first issue, which disposes of the case, it is unnecessary to pass upon the second issue.

For the reasons assigned the judgment is affirmed.