YARRUT, Judge
(dissenting).
My first impression from the oral argument in Court was that the District Court’s judgment had to be reduced to the value of the St. Bernard Bank shares and the vacant lot of ground. However, after reading the transcript of testimony and the accompanying documentary evidence, I have concluded the judgment should be amended and affirmed, as stated below.
The execution of the Option Agreement was the culmination of long and tedious negotiations between Plaintiff and Defendants, and their respective attorneys, Defendants being represented in the negotiations by Mr. Ewell C. Potts, Jr., as their attorney and bookkeeper. These negotiations were completely at arms’ length. Pri- or to the execution of the Option Agreement, Plaintiff had actually filed suit against Defendants, the holders of the majority shares of Stockyards, because he felt they had paid themselves excessive salaries.
One of Plaintiff’s reasons for the purchase of Salta shares was his desire to gain control of Stockyards.
After several years of hard bargaining the Option Agreement was finally reached and typed in Mr. Potts’ office, each page bearing his initials. He was the sole witness.
*798 Because Defendants were afraid Plaintiff might not exercise his option, Defendants denied him an opportunity to examine Salta’s books and records; for which reason Plaintiff insisted that Defendants warrant the accuracy of the balance sheets of both Salta and Stockyards attached as Exhibits to the Option Agreement. Mr. Potts certified the Salta balance sheet to be “a true financial statement of the Salta Corporation,” on the lower left-hand corner of which appears the following language:
“Salta Corporation, Capital—
2418 Shares of Capital Stock of Salta Corporation outstanding, 700 of which are owned by the Corporation as Treasury Shares.”
The Salta balance sheet also contained the items of the St. Bernard Bank shares and the vacant lot of ground.
The express warranties in the Option Agreement pertinent here, are:
1. That the balance sheet of Salta Corporation “reflects the true financial statement of the said corporation as of July 31, 1958.”
2. “That the financial condition of the Salta Corporation and the New Orleans Stockyards, Inc., respectively, on the date of delivery of the shares by GRANTEES unto GRANTOR as called for herein, shall be at least as good as it appears in the said Exhibits A and B, less only ordinary operating expenses as may be required, and that neither the Salta Corporation nor the New Orleans Stockyards, Inc., have any liability of any nature other than those as shown on the attached Exhibits A and B.”
3. That if any dividends are paid “from the date hereof until the delivery of the shares of stock as called for hereinabove, the total sales price, as above, shall be reduced by any such amount so received by Grantees.”
These warranties are in clear and unequivocal language, and were made to assure Plaintiff that the financial condition of Salta would not be depleted prior to the sale, and to avoid an investigation of the internal affairs of Salta by Plaintiff in case he should not exercise his option.
Following notice on January 20, 1960 to Defendants that Plaintiff would exercise his option, the sale was made on February 23, 1960. The sale agreement specifically recited that the terms of the Option Agreement would remain in full force and effect and were in no manner waived by Plaintiff.
Plaintiff promptly wrote Defendants a letter confirming that he paid the purchase price rather than delay the sale awaiting his auditors’ examination and report.
Plaintiff’s accountants reported to him that Defendants had violated the following express warranties:
1. Instead of the corporation owning 700 Treasury Shares of 2418 Shares issued, it owned only 70 Treasury Shares, without any cash addition to its assets in lieu of the 630 missing Treasury Shares.
2. On February 23, 1960, a dividend was declared, whereby Defendants obtained the 28 shares of the St. Bernard Bank for no consideration.
3. On the same day, Defendants obtained the lot of ground for no consideration.
Plaintiff insisted upon an accurate and warranted balance sheet because he had no other means of deciding whether or not it was advisable for him to exercise his option. Plaintiff’s complete reliance upon the warranted balance sheet is fully supported by his Exhibit No. 11, which contains the figures he used. This Exhibit bears the *799 notation, “12/59 R.H.,” which means December, 1959, and Plaintiff’s initials.
On this document Plaintiff deducted from the outstanding shares of Salta the 700 shares expressly warranted as having been owned by Salta as Treasury Shares in the balance sheet which, at $100.00 per share, totals $70,000.00.
Plaintiff and his accountant (Mr. Ott) both concluded that there were only 1718 shares of stock outstanding on that date, since the total number of shares issued was 2418, less 700 Treasury Shares. Defendants did deliver 2348 shares instead of 1718. Plaintiff explained that he presumed the corporation had sold 630 of its 700 Treasury Shares to the stockholders at their true value of $100.00 per share, which would not justify his objection because, had the missing 630 shares been so sold, Salta’s assets would have been increased by $63,000.00; accruing to Plaintiff as the new owner of Salta.
There can be no doubt that, because Defendants failed to deliver the Bank shares and the real estate, Plaintiff is entitled to recover their value, fixed by expert testimony at $2186.00.
The real issue is whether Defendants are liable for the value of the 630 Treasury Shares, which were neither produced in kind nor their cash value of $63,000.00.
In the case of Carolet Corp. v. Garfield, 339 Mass. 75, 157 N.E.2d 876, plaintiff purchased from defendants 600 shares of a designated corporation. Prior to the sale, defendants had furnished plaintiff a detailed statement of the financial condition of the corporation as of October 31, 1948. At the time of the purchase (January 13, 1949) defendants made certain express written warranties, including the following:
“ * * * each of the undersigned warrants and represents to you * * * 3. That the balance sheet as of October 31, 1948, and the profit and loss statement for the year ended the same date, copies of which are attached hereto, are true and complete and fairly represent the financial condition of the (corporation) as of such date, including all liabilities contingent or otherwise and the results of the operations of the (corporation) for the period indicated * * * 4. That there has been no material adverse change in the condition of the (corporation) as set forth in said balance sheet as of October 31, 1948.”
After the sale it was found that the financial statement failed to reflect the true condition of the corporation in the amount of $92,265.68. The trial court rendered judgment for that amount, plus interest.
The Supreme Court of Massachusetts affirmed the judgment of the lower court, and after an extensive review of all of the authorities, stated the following:
“The express written warranty that the balance sheet reflected all liabilities and was otherwise true and accurate, and the findings of the master that the assets and liabilities of the corporation were not as shown on the balance sheet in specified particulars, were sufficient to support the final decree.”
The Court also held that the warranty was enforceable “irrespective of any fraud on the part of the seller or knowledge on his part that the representations constituting the warranty were untrue.”
In McCarthy v. Tetyak, 184 Kan. 126, 334 P.2d 379, defendant sold all of the stock in a named corporation, attaching thereto a balance sheet purporting to show all assets and liabilities. In the sale, the vendor warranted that the balance sheet “was complete and correct.” The purchaser later discovered several undisclosed liabilities and sued to recover the amount of such liabilities. The Supreme Court affirmed the judgment for Plaintiff for the full amount of the undisclosed liabilities.
In the case of Gibbens & Gordon v. Crane Co., 15 La.App. 335, 131 So. 73, *800 plaintiff sought damages for breach of contract because defendant had warranted that certain material sold to plaintiff would be accepted by the U. S. Steamboat Inspectors. The Inspectors rejected the material. Even though defendant established that the local Inspectors had erred in rejecting the material, the Court of Appeal held that defendant, by warranting that the material would be accepted by the Inspectors, had made an absolute warranty and was bound thereby; the Court reasoning that an express warranty cannot be set aside on the basis of an ■error.
When paying the full sum demanded by Defendants pursuant to Mr. Potts’ assurance it was the total amount due, Plaintiff was then without means to verify the accuracy of the figure until his auditors could ■check the books and records of the corporation.
Mr. Potts explained why, prior to the ■sale, Plaintiff had only seen the balance ■sheet made part of the Option Agreement, as follows:
“A. Yes, sir, Mr. Hodges did not have to have records of the Salta Corporation during that period, because the transaction was based on the hundred dollars a share for each outstanding share of stock of Salta, the 170 of New Orleans Stockyards Corporation, and the fact that neither corporation had changed its financial condition during the intervening period, from the date of the option to the time of the passing of the act of sale. It was at the time of the act of sale when I delivered to Mr. Hodges all of the records of Salta Corporation.”
Defendants have never explained, however, why it was that, notwithstanding a month elapsed between Plaintiff’s exercise of his option (January 20, 1960) and the completion of the sale (February 23, 1960), Plaintiff was not given access to Salta’s books until after the completion of the sale and the payment of the purchase price. Once Plaintiff exercised the option, there could no longer be any fear that Plaintiff sought the option as a ruse to examine Salta’s books.
A payment made in error can be recovered by the party who made the overpayment.

LSA-C.C. Art. 2301.

“He who receives what is not due to him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it.”
I cannot draw any difference between Defendants’ responsibility under the warranties for failing to deliver the St. Bernard Bank shares and the vacant lot, on the one hand, and the missing 630 Salta Treasury Shares, on the other hand, as assets of Salta. However, I am firmly convinced that Defendant-Hillery, spokesman with attorney-bookkeepér Potts for Defendants in all the negotiations with Plaintiff, was as well-informed as was Mr. Potts regarding the Treasury Shares warranty.
Express warranties must be fulfilled unless it is shown that warrantee had, or should have had, full and complete knowledge that the warranties were clearly erroneous; or unless the warrantee’s conduct borders» on fraud and ill-practice, which I cannot find present in this case, particularly because warrantee was denied access to the books before exercising his option. Both parties were hard-bargainers, competent businessmen, represented by competent counsel, and should be held to strict compliance with their bargain and warranties.
It must be remembered that Plaintiff is not demanding damages for Defendants’ failure to deliver the 630 Treasury Shares, but seeks only the return of the purchase price paid for such shares, which Defendants failed to deliver as an asset of Salta, along with the other assets listed on the warranted balance sheet.
*801 It is my opinion that the judgment of the District Court should be affirmed in awarding Plaintiff the $63,000.00, but Defendants should not be cast in solido, each only for his pro rata thereof, to be determined by the percentage the promissory note he received bears to the whole $125,000.00 credit portion of the purchase price paid by Plaintiff; i. e., if a Defendant received 15% of such credit portion, he should be cast in judgment for only 15% of the $63,000.00 judgment; not in solido for the whole.
Rehearing denied; YARRUT, J., is of the opinion that a rehearing should be granted.