CAROLET CORP. *vs.* SAMUEL GARFIELD & others.

Essex.    February 4, 1959. — April 17, 1959.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, & CUTTER, JJ

*Sale,* Warranty.   *Deceit.*

In a suit in equity to reach and apply, essentially an action at law, by a
    purchaser of corporate stock against the seller, where it appeared that
    at the time of the purchase the defendant gave the plaintiff a signed
    letter stating the terms of the sale and further stating that the de-
    fendant "warrants and represents to you" that a financial statement
    "attached hereto," a copy of which had been submitted to the plaintiff
    by the defendant shortly before the sale, ". . . [is] true and complete
    and fairly represent[s] the financial condition of the . . . [corporation]
    including all liabilities contingent or otherwise" except two debts in
    stated amounts, and it further appeared that the financial statement
    actually did not reflect other debts and certain salaries and taxes owed
    by the corporation in substantial amounts and listed an account re-
    ceivable at a value far greater than its real value, a conclusion that
    the defendant was liable to the plaintiff for breach of warranty and
    deceit was justified;  there was no merit in contentions of the de-
    fendant that the unequivocal statements in the letter were qualified
    by a recital by him in the financial statement that "The above state-
    ment, to the best of . . . [my] knowledge and belief, truly repre-
    sents the financial condition" of the corporation, and that the state-
    ments in the letter were not statements of fact but merely expressions
    of his opinion of the financial condition of the corporation.

BILL IN EQUITY, filed in the Superior Court with a writ of summons and attachment dated July 6, 1953.

The suit was heard by *Brogna*, J., on a master's report.

*William E. Carey*, for the defendant Samuel Garfield.

*Fernand A. Boudreau*, for the plaintiff.

SPALDING, J.   This suit is on the equity side of the court solely because it seeks to reach and apply shares of corporate stock owned by two of the defendants.   In essence, however, the suit is an action at law to recover for breach of a warranty given in connection with the sale of stock of Whitman Plastics, Inc.

A master, to whom the case was referred and whose report, as supplemented, was confirmed by an interlocutory decree, found the following facts: On January 13, 1949, the plaintiff, then known as William Whitman Company, Inc., purchased from the defendant Samuel Garfield six hundred shares of the common stock of Whitman Plastics, Inc. (hereinafter called the corporation), a Massachusetts corporation formerly known as Garco Products, Inc.   On the same day the plaintiff also purchased debentures of the corporation in the amount of $250,000.   Prior to this date the defendants Samuel Garfield, Henry Garfield and Bernard Garfield (hereinafter referred to as the Garfields) had furnished the plaintiff a detailed statement of the financial condition of the corporation as of October 31, 1948.   At the time of the purchase the Garfields delivered to the plaintiff a letter signed by each of them.   Included in this letter, which set forth the terms of the sale, was the following: ". . . each of the undersigned warrants and represents to you . . . 3. That the balance sheet as of October 31, 1948, and the profit and loss statement for the year ended the same date, copies of which are attached hereto, are true and complete and fairly represent the financial condition of the . . . [corporation] as of such date, including all liabilities contingent or otherwise and the results of the operations of the . . . [corporation] for the period indicated, except that said financial statements do not include the bill of Joseph S. Kaufman for legal services in the amount of $6,500 and the bill of Myron Friedman for accounting services in the amount of $5,000.   4. That there has been no material adverse

change in the condition of the . . . [corporation] as set forth in said balance sheet as of October 31, 1948."

The master found that the aggregate of the liabilities of the corporation reflected in the statement of financial condition furnished to the plaintiff did not include debts due from the corporation to Irving Zamcheck and to Sam Baril, salaries due to William Davis and to Courtland C. Woodall, taxes owed by the corporation in respect to its income during the years 1944 and 1945 to the United States and to the Commonwealth, and a sum owed to the United States for documentary stamps. An account receivable listed as worth $10,363.80 proved after litigation to be worth only $2,423.48. The extent to which the financial statement failed to reflect the true condition of the corporation amounted in the aggregate to $87,233.71. The corporation also incurred reasonable expenses in the amount of $5,031.97 in contesting some of the undisclosed liabilities.

A final decree was entered adjudging that the Garfields owed the plaintiff the sum of $92,265.68 and interest in the amount of $24,328.14, or a total of $116,593.82. Samuel Garfield, hereinafter called the defendant, appealed. The defendants Bernard and Henry Garfield not having appealed, the plaintiff moved in the Superior Court that execution issue against them. This motion was denied and the plaintiff brings the question of the correctness of this ruling here by a bill of exceptions.

The defendant's appeal is founded upon the contention that the master's report does not contain findings of fact sufficient to establish his liability. In support of this contention, he argues that the plaintiff's case is really one of tort for deceit. Hence, to recover, the plaintiff was required to prove that the representations were false and were made with knowledge of their falsity, or that they were made recklessly. The findings of the master, it is said, establish neither of these propositions. The defendant urges that the representations in the letter on which the plaintiff relies were no more than representations of the financial condition of the corporation as of January 13, 1949, to the best of his

knowledge and belief. In other words they did no more than state that all the liabilities of the corporation of which he had any knowledge were included. They were merely expressions of opinion as to the financial condition as of then. The possibility that future events might affect the situation did not render him liable, for the matters represented were not susceptible of actual knowledge. Thus, it is argued, the defendant would not be liable for intentional deceit nor could he be held under the rule laid down in the case of *Chatham Furnace Co.* v. *Moffatt*, 147 Mass. 403, which imposes liability for a false though innocent representation of a material fact susceptible of knowledge which was made of the party's own knowledge and was stated as a fact and not as matter of opinion.

The defendant's contention is without merit. His theory of the case totally ignores the fact that the gravamen of the plaintiff's complaint is not conscious misrepresentation of the value of the stock, but breach of the warranty that the statement of financial condition was ". . . true and complete and fairly represent[s] the financial condition of the [corporation] . . . including all liabilities contingent or otherwise . . ." (with stated exceptions). This express warranty conferred contractual rights upon the plaintiff in addition to its status as a representation which could serve as a basis for an action of tort. It is true that the origins of the action on a warranty lie exclusively in tort for deceit. Ames, History of Assumpsit, 2 Harv. L. Rev. 1, 8. Williston, Sales (Rev. ed.) §§ 195, 196. But at least since the decision in *Stuart* v. *Wilkins*, 1 Doug. K. B. 18, rendered in 1778, the remedy of assumpsit was allowed for the breach of a warranty. See *Norton* v. *Doherty*, 3 Gray, 372, 373. In more recent times the general course of decision has been to treat express warranties as contracts of indemnity rather than as representations, unless a recovery in tort for deceit is specifically sought. "Usually a warranty is thought of and often is a contract or an express promise." *Turner* v. *Central Hardware Co.* 353 Mo. 1182, 1189. And the Court of Appeals for the Second Circuit, per L. Hand, J., has

stated: "A warranty is a term of the [sales] contract, and must be based upon mutual understanding." *Compagnia Italiana Trasporto Olii Minerali* v. *Sun Oil Co.* 43 F. 2d 683, 685. See *Miller* v. *Germain Seed & Plant Co.* 193 Cal. 62; *Roberts Distrib. Co.* v. *Kaye-Halbert Corp.* 126 Cal. App. 2d 664; *Steiner* v. *Jarrett*, 130 Cal. App. 2d 869, 874; *Fairbank Canning Co.* v. *Metzger*, 118 N. Y. 260, 265; Note, 29 Ind. L. J. 173; 77 C. J. S., Sales, §§ 301, 302, 304; 46 Am. Jur., Sales, §§ 299, 313; Williston, Contracts (Rev. ed.) §§ 673, 970 et seq., 1505; Williston, Sales (Rev. ed.) § 197; Williston, Representation and Warranty in Sales, 27 Harv. L. Rev. 1.

In this Commonwealth an action of tort as well as an action of contract may be maintained for breach of warranty. *Norton* v. *Doherty*, 3 Gray, 372, 373. *Schuler* v. *Union News Co.* 295 Mass. 350, 353. However, this dual attribute of a warranty forms no basis for a contention that the giving of a warranty does not impose a contractual obligation on the warrantor. This court has often entertained actions based upon breach of warranty sounding exclusively in contract. See *Schmoll Fils & Co. Inc.* v. *S. L. Agoos Tanning Co.* 256 Mass. 195; *Denenberg* v. *Jurad*, 300 Mass. 488; *Whittemore* v. *Thompson-Winchester Co. Inc.* 321 Mass. 365. "It should not be the law, and by the weight of modern authority, it is not the law that a seller who by positive affirmation induces a buyer to enter into a bargain can escape from liability by convincing the court that his affirmation was not an offer to contract. A positive representation of fact is enough to render him liable. The distinction between warranty and representation which is important in some branches of the law is not appropriate here." Williston, Sales (Rev. ed.) § 197.

The express written warranty that the balance sheet reflected all liabilities and was otherwise true and accurate, and the findings of the master that the assets and liabilities of the corporation were not as shown on the balance sheet in specified particulars, were sufficient to support the final decree.

Since this is a suit in equity there was no characterization of the underlying action for breach of warranty as sounding in contract or tort. The plaintiff was entitled, nevertheless, to have the case considered as sounding in contract. But even if we should treat the bill as stating a case sounding in tort for deceit, the master's findings were nevertheless sufficient to support the decree. In such an action the buyer is not required to prove any fraud on the part of the seller in making representations of fact to induce the buyer to enter into a bargain or knowledge on the part of the seller that his representations were false. In the case most similar to the one at bar this court said: "To recover the plaintiff is not required to prove that there was any fraudulent intent upon the part of the defendants." *Hanley Co. Inc.* v. *Whitney,* 279 Mass. 546, 557. With regard to the seller's state of knowledge, see *Norton* v. *Doherty,* 3 Gray, 372, 373; *Childs* v. *Krey,* 199 Mass. 352. An "action of tort for warranty has been held by distinguished courts to lie irrespective of any fraud on the part of the seller or knowledge on his part that the representations constituting the warranty were untrue." Williston, Sales (Rev. ed.) § 197.

The defendant argues, on the assumption that his assertion that the underlying action here is grounded solely upon tort principles is accepted, that he cannot be held liable on the theory of the *Hanley Co.* and *Chatham Furnace Co.* cases because his representations in the letter, when read in conjunction with his statement appearing on the balance sheet attached to it, cannot be considered as representations of fact. Construed in this manner, he argues, they amounted to no more than expressions of opinion. We might add that if the statement in the balance sheet qualifies the warranty the effect of the warranty, viewed as a contractual undertaking, would also be diminished. Accordingly we shall proceed to consider it.[1]

---

[1] That statement was as follows: "The above statement, to the best of our knowledge and belief, truly represents the financial condition of the . . . [corporation] as of October 31, 1948, as it appears on our records and as it is evidenced by this statement."

The letter of January 13, 1949, contained the terms of sale. So far as appears it constituted the written contract. The statements in that letter appearing after the phrase ". . . each of the undersigned warrants and represents to you . . ." were unequivocal assertions of fact. The letter contains no qualification of the statements material here, except as to specified amounts owing to Kaufman and Friedman. The letter describes the statement of financial condition as "attached hereto." It does not incorporate the statement of financial condition by reference nor does it refer to any writing appearing in that statement. The conclusion seems inescapable that the parties did not intend that the express warranty in the letter was to be qualified by the clause appearing on the balance sheet here invoked. The intent manifested in the letter was that the balance sheet was to be used only to ascertain the existence and amounts of the specific assets and liabilities reflected there. The recitation in the warranty itself that the balance sheet did not reflect obligations of the corporation to Kaufman in the amount of $6,500 and to Friedman in the amount of $5,000 supports this conclusion. This view is reinforced by the fact that a copy of the statement of financial condition containing the clause in question was furnished to the plaintiff prior to the delivery of the letter of January 13, 1949. We are of opinion, therefore, that the firm and unequivocal warranty contained in the letter superseded this clause and rendered it irrelevant.

The express warranty the plaintiff bargained for and relied upon was not an illusory one. Viewed from the standpoint of deceit, the statements in the letter were assertions of fact and were in fact untrue. The matters represented were the existence and amount of the assets and liabilities of the corporation, and these were matters susceptible of actual knowledge. See *Chatham Furnace Co.* v. *Moffatt*, 147 Mass. 403, 404. Thus, upon any view of the case (tort or contract), the judge did not err in entering the final decree adjudging the defendant liable.

At the arguments before this court counsel for the plaintiff stated that if the plaintiff prevailed in this appeal then it waived its exceptions. Accordingly we do not consider the propriety of the judge's refusal to grant the plaintiff's motion for issue of execution against Bernard and Henry Garfield.

> *Interlocutory decree affirmed.*
> *Final decree affirmed with costs of*
>     *appeal to the plaintiff.*
> *Plaintiff's exceptions dismissed.*