[Civ. No. 35083. First Dist., Div. Two. Nov. 6, 1975.]

MARTIN K. BECKER, Plaintiff and Appellant, v.
VOLKSWAGEN OF AMERICA, INC., Defendant and Respondent.

**COUNSEL**

James W. Luther and Barry Wood for Plaintiff and Appellant.

Carroll, Burdick & McDonough, Rodney L. Eshelman and Herzfeld & Rubin for Defendant and Respondent.

**OPINION**

**ROUSE, J.**—On November 9, 1973, Martin Becker commenced an action against defendant Volkswagen of America, Inc., seeking to recover damages for personal injuries which he allegedly sustained as a result of the defective manufacture of his 1969 Volkswagen Karman Ghia automobile. In his complaint, plaintiff alleged that he had purchased the car on or about June 13, 1969, and that on or about February 24, 1970, when he was driving the car, fuel vapors entered the passenger compartment of the car from the gas tank area, rendered him unconscious and caused him to drive his car off the road. It was further alleged that the cause of the accident was not known until August 31,

1973, at which time plaintiff learned from defendant of the defective condition of the car and the fact that the accident had been caused by the escaping fuel vapors.

Plaintiff's complaint was framed in two counts, based upon express and implied warranty. The first count alleged that defendant had expressly warranted to plaintiff and other members of the general public that the 1969 Volkswagen Karman Ghia was safe for its intended use as a passenger vehicle and that it had been manufactured, designed, tested and inspected so as to insure that it would remain safe for its intended use for a reasonable time into the future after it had been purchased. The second count alleged that defendant had impliedly warranted that the 1969 Volkswagen Karman Ghia was fit and of merchantable quality and safe for use as a passenger vehicle and that it would remain so for a reasonable time into the future after it had been purchased.

Defendant demurred to the complaint, asserting that plaintiff's action was barred by the statute of limitations, in that section 340, subdivision 3, of the Code of Civil Procedure, required that an action "for injury to . . . one caused by the wrongful act or neglect of another" be brought within one year. Plaintiff filed points and authorities in opposition to the demurrer and asserted that the applicable statute of limitations was contained in section 2725 of the California Uniform Commercial Code,[1] which provided that an action for breach of any contract of sale must be commenced within four years after the cause of action accrued.

The trial court sustained the demurrer, allowing plaintiff 20 days within which to amend the complaint, "if possible." When plaintiff failed to amend within the time allowed, the court entered a judgment of dismissal. Plaintiff now appeals from that judgment.

The central issue on appeal, i.e., whether a personal injury action based upon breach of warranty is governed by the statute of limitations set forth in section 340, subdivision 3, of the Code of Civil Procedure or by that which is set forth in section 2725 of the Commercial Code, is one of first impression in this state. Although the question has been decided in several other jurisdictions, the cases are not in agreement.

---

[1] California Uniform Commercial Code shall hereafter be referred to as "Commercial Code."

Typical of those cases which have held that the adoption of the Uniform Commercial Code[2] changed the law and rendered the Code's four-year statute of limitations controlling over all actions based upon breach of warranty are *Sinka* v. *Northern Commercial Company* (Alaska 1971) 491 P.2d 116; *Berry* v. *G. D. Searle & Co.* (1974) 56 Ill.2d 548 [309 N.E.2d 550]; *Redfield* v. *Mead, Johnson & Company* (1973) 266 Ore. 273 [512 P.2d 776]; *Gardiner* v. *Philadelphia Gas Works* (1964) 413 Pa. 415 [197 A.2d 612]; *Layman* v. *Keller Ladders, Inc.* (1970) 224 Tenn. 396 [455 S.W.2d 594]; and *Val Decker Packing Co.* v. *Corn Products Sales Co.* (6th Cir. 1969) 411 F.2d 850. These cases have approached the problem by applying the traditional rules of statutory construction in order to ascertain the intent of the state Legislature when it adopted the Uniform Commercial Code. Among the factors considered significant by these courts was the general repealer provision of the Code (in California § 10103 of the Com. Code) which provides that "Except as provided in the following section, all acts and parts of acts inconsistent with this act are hereby repealed." The courts have also relied upon section 1-102 of the Code[3] which states that "(1) This code shall be liberally construed and applied to promote its underlying purposes and policies. (2) Underlying purposes and policies of this code are (a) To simplify, clarify and modernize the law governing commercial transactions; . . . (c) To make uniform the law among the various jurisdictions." The courts reasoned that since section 2-715(2) of the Code[4] provided that "Consequential damages resulting from the seller's breach include . . . (b) Injury to person or property proximately resulting from any breach of warranty," it was obvious that the remedy afforded by the Code for a breach of warranty was in no way limited by the type of injury proximately resulting from the seller's breach. Section 2-725 of the Code[5] provided that actions for breach of "any contract for sale" must be commenced within four years after the cause of action accrued. In view of the clear and unequivocal language of this section, the fact that damages for personal injuries and injuries to property could be recovered in a breach of warranty action, the existence of the general repealer provision and the stated purpose of the Code to simplify the law and make it uniform in all jurisdictions, the courts involved in those cases cited above concluded that the intent of the Legislature must have been to repeal any existing statutes providing a different statute of limitations for actions based upon a breach of warranty.

---

[2] Uniform Commercial Code shall hereafter sometimes be referred to as "Code."
[3] Section 1102, Commercial Code.
[4] Section 2715, subdivision (2), Commercial Code.
[5] Section 2725, Commercial Code.

In regard to three of those cases, it should be pointed out that, prior to the adoption of the Uniform Commercial Code, it had been the law that the statute of limitations applicable to personal injury actions governed *all* such actions, regardless of whether they arose out of contract or tort. (*Berry* v. *G. D. Searle & Co., supra; Gardiner* v. *Philadelphia Gas Works, supra;* and *Layman* v. *Keller Ladders, Inc., supra.*) Thus, the courts involved in those cases held, simply, that the adoption of the Code had altered this rule of law.

In opposition to the authorities discussed above are four cases which have declined to apply the Uniform Commercial Code statute of limitations in a situation involving a choice between the Code provision and a state statute governing actions for personal injuries or property damage. These cases have not approached the problem in a uniform manner. In *United States Fidelity & G. Co.* v. *Truck & Con. Equip. Co.* (1970) 21 Ohio St.2d 244 [50 Ohio Ops.2d 480, 257 N.E.2d 380], the court held that the Code statute of limitations for a breach of warranty action could not apply because the plaintiff was not in any privity relationship recognized by the Code and that the complaint, therefore, failed to state a cause of action for breach of warranty. In *Tyler* v. *Street & Co.* (E.D.Va. 1971) 322 F.Supp. 541, the court found persuasive an argument which, as noted above, was rejected in *Berry* v. *G. D. Searle & Co., supra; Gardiner* v. *Philadelphia Gas Works, supra,* and *Layman* v. *Keller Ladders, Inc., supra.* The decision in *Tyler* was based upon the fact that, in an action which did not involve the Uniform Commercial Code, the Virginia Supreme Court had held that the statute of limitations applicable to personal injury actions, and not that applicable to contract actions, governed all personal injury actions regardless of whether they were based upon tort or contract. The *Tyler* court concluded that, in view of this decision and the fact that the Code dealt with actions on a contract, Virginia would hold that a personal injury action based upon breach of warranty was governed by the statute of limitations applicable to personal injury actions and not the statute of limitations prescribed by the Code.

■ The two remaining cases which have declined to apply the Code statute of limitations to personal injury actions are *Abate* v. *Barkers of Wallingford, Inc.* (1967) 27 Conn.Supp. 46 [229 A.2d 366], and *Heavner* v. *Uniroyal, Inc.* (1973) 63 N.J. 130 [305 A.2d 412]. After analyzing the nature of a personal injury action for breach of warranty, the court in each of these cases has concluded that it is essentially a tort action which should not be governed by the buyer and seller concepts of the Uniform Commercial Code. Both cases quoted with approval from comment m in

the Restatement Second of Torts, section 402A, which concerns the strict liability of a seller of a product for physical harm to a user or consumer. Since it is pertinent to our discussion, we quote somewhat extensively from comment m, which provides, in part, as follows: " *'Warranty.'* The liability stated in this Section does not rest upon negligence. It is strict liability. . . . The basis of liability is purely one of tort.

"A number of courts, seeking a theoretical basis for the liability, have resorted to a 'warranty,' either running with the goods sold, by analogy to covenants running with the land, or made directly to the consumer without contract. In some instances this theory has proved to be an unfortunate one. Although warranty was in its origin a matter of tort liability, and it is generally agreed that a tort action will still lie for its breach, it has become so identified in practice with a contract of sale between the plaintiff and the defendant that the warranty theory has become something of an obstacle to the recognition of the strict liability where there is no such contract. There is nothing in this Section which would prevent any court from treating the rule stated as a matter of 'warranty' to the user or consumer. *But if this is done, it should be recognized and understood that the 'warranty' is a very different kind of warranty from those usually found in the sale of goods, and that it is not subject to the various contract rules which have grown up to surround such sales.*

"The rule stated in this Section does not require any reliance on the part of the consumer upon the reputation, skill, or judgment of the seller who is to be held liable, nor any representation or undertaking on the part of that seller. The seller is strictly liable although, as is frequently the case, the consumer does not even know who he is at the time of consumption. *The rule stated in this Section is not governed by the provisions of the Uniform Sales Act, or those of the Uniform Commercial Code, as to warranties; and it is not affected by limitations on the scope and content of warranties, or by limitation to 'buyer' and 'seller' in those statutes.* Nor is the consumer required to give notice to the seller of his injury within a reasonable time after it occurs, as is provided by the Uniform Act. The consumer's cause of action does not depend upon the validity of his contract with the person from whom he acquires the product, and it is not affected by any disclaimer or other agreement, whether it be between the seller and his immediate buyer, or attached to and accompanying the product into the consumer's hands. In short, 'warranty' must be given a new and different meaning if it is used in connection with this Section. It is much simpler to regard the liability here stated as merely one of strict liability in tort." (Italics supplied.)

In *Abate* v. *Barkers of Wallingford, Inc., supra,* a trial court decision, the court took note of the need to distinguish between the developing law regarding product liability and liability predicated upon contract or simple negligence. The court pointed out that the Connecticut Supreme Court had recently quoted with approval from comment m and concluded that although the complaint before it was framed in terms of breach of implied warranty, the plaintiff was actually seeking to impose strict liability in tort upon the defendant. The court held, therefore, that the action was not governed by the statute of limitations contained in the Uniform Commercial Code but by the statute of limitations applicable to tort actions.

In *Heavner* v. *Uniroyal, Inc., supra,* at page 424, the court explained its reliance upon the reasoning of the Restatement comments as follows: "When we consider Chapter 2, 'Sales,' of the Uniform Commercial Code, . . . by itself, it is clear that the emphasized conclusion of the Restatement Comments . . . is sound. It must be recalled that the Code was principally drafted in the 1950's before the judicial strict liability revolution had really commenced. As Dean Prosser says, the draftsmen of the Code 'initially failed entirely to sense the trend of the case law . . . .' *(Prosser,* [Law of Torts (3d ed. 1964) at p. 658]). And scarcely any significant changes in recognition thereof have been proposed since. Fundamentally, the chapter is commercially and contractually oriented. Its basic framework is that of transactions for the sale of goods between a buyer and his seller and, in the main, the legal incidents with which it deals contemplate two such contracting parties in the conventional commercial setting and claims based on economic loss or loss-of-the-bargain."

The *Heavner* court concluded that the provisions of the sales chapter of the Code are not intended to apply to actions for consequential personal injury and property damages except where the suit is between a buyer, or the limited additional class of beneficiaries, and the immediate seller, and even then, only on the basis of a "warranty" in the commercial sales sense as provided for in the chapter. (P. 425.)

The court held, therefore, that the statute of limitations for tort actions and not the Code statute of limitations governed the plaintiffs' action for breach of warranty both against the retailer and the manufacturer. In so holding, the court observed that the matter before them was a consumer's action in strict liability in tort. The court pointed out that their cases follow the view of the Restatement and Dean Prosser, namely, that such causes of action represent a new concept not governed by the

commercial contract thesis of the Code provisions and that one gains no advantage by pleading them in terms of breach of warranty, express or implied. Finally, the *Heavner* court announced its rule that, when the gravamen is a defect in the article and consequential personal injury and property damages are sought, they will be taken for what they actually are, no matter how expressed. (Pp. 426-427.)

The courts of this state have long recognized and applied the principles underlying the *Heavner* decision. In *Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 63 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049], our Supreme Court stated, "Although in these cases strict liability has usually been based on the theory of an express or implied warranty running from the manufacturer to the plaintiff, the abandonment of the requirement of a contract between them, the recognition that the liability is not assumed by agreement but imposed by law [citations], and the refusal to permit the manufacturer to define the scope of its own responsibility for defective products [citations] make clear that the liability is not one governed by the law of contract warranties but by the law of strict liability in tort. Accordingly, rules defining and governing warranties that were developed to meet the needs of commercial transactions cannot properly be invoked to govern the manufacturer's liability to those injured by its defective products unless those rules also serve the purposes for which such liability is imposed."

In *Seely* v. *White Motor Co.* (1965) 63 Cal.2d 9, 15-16 [45 Cal.Rptr. 17, 403 P.2d 145], the court stated: "The history of the doctrine of strict liability in tort indicates that it was designed, not to undermine the warranty provisions of the sales act or of the Uniform Commercial Code but, rather, to govern the distinct problem of physical injuries.

"An important early step in the development of the law of products liability was the recognition of a manufacturer's liability in negligence to an ultimate consumer without privity of contract. [Citation.] About the same time, the courts began to hold manufacturers liable without negligence for personal injuries. Over a score of theories were developed to support liability [citation], and the one that was generally accepted was borrowed from the law of sales warranty. [Citation.] 'Only by some violent pounding and twisting,' however, could the warranty doctrine be made to serve this purpose. [Citations.] Final recognition that 'The remedies of injured consumers ought not to be made to depend upon the intricacies of the law of sales' [citing *Ketterer* v. *Armour & Co.* (S.D.N.Y. 1912) 200 F. 322, 323; *Greenman* v. *Yuba Power Products, Inc., supra,* at

p. 64] caused this court to abandon the fiction of warranty in favor of strict liability in tort. [Citations.]

" . . . Although the rules governing warranties complicated resolution of the problems of personal injuries, there is no reason to conclude that they do not meet the 'needs of commercial transactions.' The law of warranty 'grew as a branch of the law of commercial transactions and was primarily aimed at controlling the commercial aspects of these transactions.' [Citations.]"

In *Balido* v. *Improved Machinery, Inc.* (1972) 29 Cal.App.3d 633, 640-641 [105 Cal.Rptr. 890], the court cited comment m of the Restatement Second of Torts, section 402A, in support of the proposition that, in a personal injury product-liability action not involving a commercial relationship between manufacturer and injured person, warranty allegations added nothing to those of strict liability and negligence.

The language of these California cases convinces us that the California law is wholly in accord with the reasoning of the *Heavner* case and with the Restatement comment cited in that case. Thus we conclude that, by its enactment of section 2725 of the Commercial Code, the Legislature did not intend to render the statute of limitations therein set forth applicable to personal injury actions based upon a breach of warranty; further, that such actions are still governed by the statute of limitations prescribed by section 340, subdivision 3, of the Code of Civil Procedure. It follows that the trial court was correct in sustaining the demurrer.

The judgment of dismissal is affirmed.

Taylor, P. J., and Kane, J., concurred.

A petition for a rehearing was denied December 5, 1975, and appellant's petition for a hearing by the Supreme Court was denied December 30, 1975.