879 P.2d 1095

**Jeffrey OATS, Earl H. Oats and Phyllis E. Oats, Plaintiffs–Appellants,**

v.

**NISSAN MOTOR CORPORATION IN THE U.S.A., Defendant– Respondent.**

**and**

**Michael David Beaudoin, Bradley Howard Smith, and Henry Andrew Stewart, Jr., Defendants.**

No. 20397.

Supreme Court of Idaho.

Aug. 19, 1994.

Comstock & Bush, Boise, for plaintiffs-appellants. John A. Bush argued.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for defendant-respondent. Stephen R. Thomas argued.

SILAK, Justice.

Jeffrey Oats brought this action to recover for personal injuries he suffered while riding as a passenger in a 1978 Datsun 280Z 2 + 2 sports car manufactured by Nissan. Oats's claims against Nissan were based on theories of defective design, failure to warn, and breach of warranty. The district court granted summary judgment to Nissan, concluding that Oats's design defect and failure to warn claims were barred by the statute of repose set forth in the Idaho Product Liability Reform Act (IPLRA), and that Oats's breach of warranty claim was barred by the Uniform Commercial Code's four year statute of limitations. Oats appeals from the order of summary judgment. For the reasons set forth below, we affirm in part, reverse in part, vacate the order of summary judgment, and remand for further proceedings.

## I. FACTS AND PROCEDURAL BACKGROUND

On February 14, 1989, Jeffrey Oats was involved in a two car collision while riding as

a passenger in the rear seat of a 1978 Datsun 280Z 2 + 2, manufactured and marketed by Nissan.[1] Oats was rendered a quadriplegic as a result of the head and spinal cord injuries he sustained in the accident.

On February 13, 1991, Oats and his parents filed suit against Nissan[2] alleging claims of design defect, failure to warn and breach of warranty. In his design defect claim, Oats alleged that the 280Z 2 + 2 contained two design defects which created an unreasonable risk of enhanced injury to rear seat occupants in the event of collision: (a) the rear seat and roof structure did not provide enough head and leg room for adult occupants; and (b) the car's body panels lacked sufficient strength. In his failure to warn claim, Oats alleged that Nissan was negligent for not warning about or making safe the alleged defects in the car's design which Nissan knew, or should have known about. In his breach of warranty claim, Oats alleged that Nissan was liable for breach of express and implied warranties for marketing the 280Z 2 + 2 as being reasonably safe for the transportation of rear seat adult passengers.

On October 10, 1991, Nissan filed a motion for summary judgment, asserting that Oats's design defect and failure to warn claims were barred by the IPLRA's statute of repose, and that his breach of warranty claim was barred by the UCC's four year statute of limitations. In a memorandum opinion and order filed July 17, 1992, the district court granted Nissan's motion for summary judgment. Oats has appealed from the district court's order of summary judgment.

## II. ISSUES ON APPEAL

In deciding this appeal, we must resolve two primary issues: (A) whether the district court erred in concluding that the IPLRA's statute of repose applied to bar Oats's design defect and failure to warn claims; and (B) whether the district court erred in conclud-

ing that Oats's breach of warranty claim was barred by the UCC's four year statute of limitations. We will address these issues in turn.

## III. ANALYSIS

■ Preliminarily, we note our standard of review in this case. In an appeal from an order of summary judgment, this Court's standard of review is the same as the standard used by the district court in ruling on the motion for summary judgment. *East Lizard Butte Water Corp. v. Howell*, 122 Idaho 679, 681, 837 P.2d 805, 807 (1992). All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. *Bonz v. Sudweeks*, 119 Idaho 539, 541, 808 P.2d 876, 878 (1991). Summary judgment shall be granted if the court determines that "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c); *Bonz*, 119 Idaho at 541, 808 P.2d at 878.

A. *Whether Oats's Design Defect and Failure to Warn Claims are Barred by the IPLRA's Statute of Repose.*

The IPLRA's statute of repose, found at I.C. § 6–1403, states in pertinent part, as follows:

[6–1403] 6–1303. **Length of time product sellers are subject to liability.**—(1) Useful safe life.

(a) Except [when the product seller has expressly warranted the product for a longer period], a product seller shall not be subject to liability to a claimant for harm under this chapter if the product seller proves by a preponderance of the evidence that the harm was caused after the product's "useful safe life" had expired.

---

1. The 280Z 2 + 2 is a sports car similar to the 280Z except that the rear portion of the vehicle is extended to allow for rear seat occupancy.

2. Oats also named three other defendants: the driver of the vehicle he was riding in; the owner

of the vehicle he was riding in; and the driver of the other vehicle involved in the crash. Summary judgment was granted only in favor of Nissan, and therefore Nissan is the only defendant involved in this appeal.

"Useful safe life" begins at the time of delivery of the product and extends for the time during which the product would normally be likely to perform or be stored in a safe manner. For the purposes of this chapter, "time of delivery" means the time of delivery of a product to its first purchaser or lessee who was not engaged in the business of either selling such products or using them as component parts of another product to be sold.

.  .  .  .  .

(2) Statute of repose.

(a) Generally. In claims that involve harm caused more than ten (10) years after time of delivery, a presumption arises that the harm was caused after the useful safe life had expired. This presumption may only be rebutted by clear and convincing evidence.

Subsection (1)(a) establishes the statute of repose as an affirmative defense to liability for product sellers who are able to prove by a preponderance of the evidence that the plaintiff's injuries were not caused until after the product's "useful safe life" had expired. *Olsen v. J.A. Freeman Co.,* 117 Idaho 706, 711, 791 P.2d 1285, 1290 (1990). Subsection (2)(a) establishes a presumption that the useful safe life of all products expires ten years after the date of delivery. Thus, a product seller need only show that the harm was caused more than ten years after the date of delivery and it will be presumed that the harm occurred after the product's useful safe life, and therefore that the product seller is immune from liability. The burden then shifts to the plaintiff to rebut by clear and convincing evidence the presumption that the product's useful safe life expired after ten years, and show that the harm was actually caused before the product's useful safe life expired. Rebuttal of the presumed ten year period of repose by clear and convincing evidence is not the only method provided for plaintiffs to avoid the effects of the statute of repose. Subsection (2)(b) of the statute sets forth a number of limitations which, if shown by the plaintiff, preclude application of the presumptive ten year period of repose.

In this case, it is undisputed that the accident which caused Oats's injuries occurred more than ten years after the "time of delivery", as that term is defined by the statute, inasmuch as the subject 280Z 2 + 2 was first delivered to a consumer on February 9, 1978, and the accident did not occur until February 13, 1989. Hence, a presumption arose that Oats did not sustain his injuries until after the vehicle's useful safe life had expired. The burden was therefore upon Oats to create a genuine issue whether: (1) one of subsection (2)(b)'s limitations applied to make the presumptive ten year period of repose inoperative; or (2) he could rebut the presumption that the 280Z 2 + 2 had a useful safe life of ten years.

In opposition to Nissan's motion for summary judgment, Oats asserted that the statute of repose did not apply in this case: (1) because the alleged defects in the car's design were not discoverable by an ordinary reasonably prudent person until more than ten years after the time of delivery, and therefore the presumptive ten year period of repose did not apply under subsection (2)(b)4's "hidden defect" limitation; and (2) because the useful safe life of the 280Z 2 + 2 had not expired by the time of the accident. In its memorandum decision the district court expressly recognized the need to address these two arguments. However, the court only properly resolved the first question, concluding that the "hidden defect" limitation applied to neither of the two defects alleged by Oats. Rather than addressing the second question as a separate and distinct issue, the district court concluded that "[s]ince [Oats] has failed to show a hidden defect he also failed to overcome the presumption" that the useful safe life of the 280Z 2 + 2 expired after ten years. For the following reasons, we hold that the district court was correct in ruling that the "hidden defect" limitation did not apply under the facts of this case. We also hold, however, that the district court erred in failing to separately analyze whether Oats had created a triable issue concerning rebuttal of the presumptive ten year period of repose.

■ 1. *Applicability of the "Hidden Defect" Limitation.* The "hidden defect" limitation is found in subsection (2)(b)4 of the

statute of repose. This provision states as follows:

4. The ten (10) year period of repose established in subsection (2)(a) hereof shall not apply if ... the injury-causing aspect of the product that existed at the time of delivery was not discoverable by an ordinary reasonably prudent person until more than ten (10) years after the time of delivery, ....

To decide whether this limitation applies in this case, we must examine the nature of the defects alleged by Oats. As stated above, Oats alleged two design defects in the 280Z 2 + 2: (a) inadequate head and leg room in the rear seat; and (b) insufficient strength in the body panels. We will first consider the applicability of the "hidden defect" limitation to Oats's claim that the body panels were defectively weak.

The district court ruled that Oats had failed to produce any competent evidence to show that the car's body panels were defectively weak. We agree. The only evidence which Oats presented to support this claim was the affidavit of Dr. Fisher, a medical doctor, who stated it was his opinion that the body of the 280Z 2 + 2 was "not designed to withstand any significant impact affecting the roof structure." Fisher stated that he formed this opinion based upon his review of photographs of the accident scene and the subject vehicle, police reports, and Oats's medical records. However, Fisher did not specify any factual basis obtained from his review of these photographs and documents to support his conclusion that the body of the 280Z 2 + 2 was not designed to withstand any significant impact affecting the roof structure. In fact, at his deposition taken after he submitted his affidavit, Fisher admitted that he did not even know what forces the roof of the 280Z 2 + 2 could withstand. He also acknowledged at his deposition that he had not reviewed any engineering blueprints of the 1978 280Z 2 + 2, and that he did not know what the design specifications of the car were, such as the dimensions of the body, or the types and grades of materials used to manufacture the car's roof, body or rear seat. Rule 56(e) of the Idaho Rules of Civil Procedure provides that:

... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of that party's pleadings, but the party's response, by affidavits or as otherwise provided in this rule, *must set forth specific facts* showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.

(Emphasis added.) Thus, it was incumbent on Oats to set forth specific facts showing there was a genuine issue whether the 280Z 2 + 2's body panels were defectively weak. Fisher's opinion that the 280Z 2 + 2's body was defectively weak was wholly conclusory, and merely repeated allegations contained in Oats's complaint. It did not set forth any specific facts showing that the 280Z 2 + 2 had defectively weak body panels, as required by I.R.C.P. 56(e). *Corbridge v. Clark Equipment Co.*, 112 Idaho 85, 87, 730 P.2d 1005, 1007 (1986) (affidavit which does not set forth specific facts but is only conclusory in nature and merely repeats allegations of complaint is precisely type of flawed affidavit contemplated by I.R.C.P. 56(e)). Because Oats failed to present evidence sufficient to create a genuine issue regarding the alleged weak body defect, we need not consider whether such a defect would come under the "hidden defect" limitation. The district court was correct in granting summary judgment to Nissan with respect to this alleged defect.

■ The other design defect alleged by Oats was that the 280Z 2 + 2 did not provide enough head and leg room to allow adult rear-seat passengers to sit in a proper upright position. Oats alleged that the cramped passenger space in the rear seat posed an unreasonable risk of enhanced injuries in the event of collision because adult passengers would have to be seated in a horizontal, or sideways position, with their head and other body parts pressed against the car's interior. With respect to this alleged defect, the district court ruled that even if this were a defect, it could not be considered a "hidden defect" under I.C. § 6-1403(2)(b)4, as this aspect of the car's design

was discoverable to the ordinary reasonably prudent person. We agree.

In his affidavit, Fisher stated that inadequate passenger space is not the type of defect that would be discoverable or apparent to a reasonably prudent person. However, in rendering this opinion, Fisher did not provide the district court with any "scientific, technical, or other specialized knowledge" which would assist the it in determining whether a reasonably prudent adult riding in the rear seat of the 280Z 2 + 2 would discover the cramped space conditions in the rear seat. Therefore, Fisher's testimony on this subject was not proper expert opinion testimony. I.R.E. 702. However, even if Fisher simply gave this testimony as his lay opinion, rationally based on his own perception, we note that Fisher later recanted this affidavit testimony when he testified at his deposition. When asked at his deposition whether he could say this type of defect was discoverable to a reasonably prudent person, Fisher answered:

> No, I can't, because then it puts me—tries to put me inside somebody else's brain. Also who is and what is reasonably prudent and what are the standards of reasonable prudency, no, I don't think I can answer that.

The only other evidence concerning whether the alleged inadequate space defect was discoverable to an ordinary reasonably prudent person is contained in the affidavit of Miller, the bioengineer. In his affidavit, Miller stated:

> ... It is my opinion that a full-sized adult cannot be seated in a normal position in the rear seat of the subject Nissan vehicle. Given this limitation, an adult, in this case Jeffrey Oats, would be forced to sit in the back seat of this vehicle in a reclining or horizontal position.

Miller's statement that a full-sized adult could not assume a normal sitting position in the rear seat of the 280Z 2 + 2, but would be forced to assume a reclined position, is un-

controverted, and it demonstrates what we consider to be undisputable based on the record before us, that an ordinary adult could not sit in the rear seat of the 280Z 2 + 2 without noticing, and adjusting to, the rear seat's space limitations. Based on the evidence in the record, the district court was correct in concluding, as a matter of law, that the alleged inadequate space defect was discoverable by an ordinary reasonably prudent person, and therefore the statute of repose's "hidden defect" limitation did not apply to this alleged design defect.

2. *Whether Oats Created a Genuine Issue that He could Rebut the Presumptive Ten Year Period of Repose.*

The district court held that because the "hidden defect" limitation did not apply to either of Oats's design defect claims, he had failed to rebut the presumption that the 280Z 2 + 2 had a ten year useful safe life. However, whether Oats can rebut the ten year presumptive period of repose does not depend upon the applicability of the "hidden defect" limitation. These are two distinct questions which must be analyzed and decided separately. Even though the hidden defect exception does not apply in this case, Oats may nevertheless rebut the presumptive ten year period of repose by showing that the 280Z 2 + 2 had a useful safe life of more than ten years. Because the district court did not consider whether Oats presented sufficient evidence from which a jury could reasonably conclude that the useful safe life of the 280Z 2 + 2 had not expired by the time of the accident, we must remand for a determination of that issue.[3]

Using the statute's definition of "useful safe life", the district court must determine on remand whether there is sufficient evidence in the record from which a jury could conclude that the 280Z 2 + 2 "would normally be likely to perform ... in a safe manner" for a period extending to the date of the accident. I.C. 6–1403(1)(a). In *Olsen v. J.A. Freeman Co.,* 117 Idaho 706, 716–17, 791

---

3. The only evidence in the record concerning the useful safe life issue is the assertion in Dr. Fisher's affidavit that in his opinion the useful safe life of the 280Z 2 + 2 was longer than ten years. There is no indication in the district court's memorandum opinion and order whether the court considered the affiant incompetent to so opine, or whether the assertion was too conclusory to create a genuine issue of material fact.

P.2d 1285, 1295–96 (1990), this Court recognized that "[a]lthough the Idaho statute provides no specific criteria, example or guidelines to determine the 'useful safe life' of a product, ... such terms can be interpreted as taking their ordinary, contemporary or common meaning."

■ Because it has been the subject of dispute between the parties, we will also address the nature of Oats's burden of persuasion on this issue at the summary judgment stage of the proceedings. In order to resist Nissan's motion for summary judgment, Oats does not need to prove by clear and convincing evidence that the useful safe life of the 280Z 2 + 2 in question had not expired when the accident occurred, only that there is a genuine issue regarding that material fact. "The burden of the plaintiff when faced with a motion for summary judgment, is not to persuade the judge that an issue will be decided in his favor at trial. Rather, he simply must present sufficient materials to show that there is a *triable* issue." *G & M Farms v. Funk Irr. Co.*, 119 Idaho 514, 524, 808 P.2d 851, 861 (1991) (quoting *Earl v. Cryovac*, 115 Idaho 1087, 1093, 772 P.2d 725, 731 (Ct.App.1989)). "If the record contains conflicting inferences or reasonable minds might reach different conclusions, a summary judgment must be denied." *G & M Farms*, 119 Idaho at 525, 808 P.2d at 862.

B. *Whether the District Court Correctly Held that Oats's Breach of Warranty Claims were Barred by the UCC's Statute of Limitations.*

Oats alleged that Nissan breached express and/or implied warranties by advertising and marketing the 280Z 2 + 2 as a car which could safely transport adult persons in its rear seats without exposing them to unreasonable risks of enhanced injury in the event of collision. The district court concluded that these breach of warranty claims were barred by the UCC's four year statute of limitations on warranty claims, which begins to run on the date the product is first delivered to a consumer. I.C. § 28–2–725. Oats contends his breach of warranty claims should be governed by the statute of limita-

tions for product liability claims found in the IPLRA, I.C. § 6–1403(3). Under the IPLRA's statute of limitations, Oats had two years from the date his cause of action accrued, which in this case occurred when Oats was injured in the accident. *Bonz v. Sudweeks*, 119 Idaho 539, 541, 808 P.2d 876, 878 (1991). Oats filed his claims the day before that two year period expired. The different lengths of time provided by the two pertinent statutes of limitations, I.C. § 28–2–725, providing four years from the date of first delivery to a consumer, and I.C. § 6–1403(3), providing two years from the time the cause of action accrues, require this Court to examine the basic concept of breach of warranty to determine whether Oats's breach of warranty claim should be governed by the UCC or the IPLRA.

■ In examining the basic concept of breach of warranty in *Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co.*, 97 Idaho 348, 544 P.2d 306 (1975), this Court recognized the "dual character of an action for breach of implied warranty as it has developed in American jurisprudence." *Id.* at 353, 544 P.2d at 311. The Court stated:

Consideration of an action grounded on breach of implied warranty can become complicated "by the peculiar and uncertain nature and character of warranty, a freak hybrid born of the illicit intercourse of tort and contract." Prosser, "The Assault Upon the Citadel," 69 Yale L.J. 1099, 1126 (1960).... Judicial utilization of the contract concept of warranty should not camouflage the fact that the courts employed the concept to permit a recovery in tort. Prosser, *supra* at 1124–34. A plaintiff generally may base an action for breach of warranty in either tort or contract. Prosser, *supra* at 1126–27. *See, e.g., Carolet Corp. v. Garfield*, 339 Mass. 75, 157 N.E.2d 876 (Mass.1959).

*Salmon Rivers*, 97 Idaho at 353, 544 P.2d at 311. Whether a product liability action for breach of warranty is governed by tort or contract law depends "upon the type of recovery sought, the legal basis upon which the desired recovery is grounded, and the applicable statute of limitations." *Id.* at 351, 544 P.2d at 309. The type of recoveries available

to a plaintiff in a product liability breach of warranty action include damages for personal injury, property damage, and economic loss. *Id.* The Court noted that personal injuries stand distinctly apart from the other two categories, and explained the difference between property damage and economic loss. "Property damage encompasses damage to property other than that which is the subject of the transaction. Economic loss includes costs of repair and replacement of defective property which is the subject of the transaction, as well as commercial loss for inadequate value and consequent loss of profits or use." *Id.* Thus, to determine whether Oats's breach of warranty claim is governed by tort or contract law, we must examine the nature of the recovery sought, and the legal basis upon which the desired recovery is grounded.

In this case, Oats seeks to recover damages for personal injuries. The UCC does provide for recovery of damages for personal injuries under its breach of warranty provisions. I.C. § 28–2–715(2)(b) (consequential damages resulting from seller's breach include personal injuries resulting from any breach of warranty). However, UCC breach of warranty actions for personal injuries are available only to a limited group of potential plaintiffs who are either in privity of contract with the manufacturer or seller, or who qualify as third party beneficiaries of the underlying sales contract, as defined in I.C. § 28–2–318.[4] *Salmon Rivers,* 97 Idaho at 354, 544 P.2d at 312. It is undisputed that Oats is not in privity of contract with Nissan. Nor has Oats asserted that he qualifies as a third party beneficiary of a Nissan warranty under section 28–2–318. Thus, the legal grounds for Oats's recovery cannot lie in contract, and, based on the undisputed facts, Oats could not maintain an action to recover

for his personal injuries under the UCC's warranty provisions. The UCC's warranty provisions were not meant to govern cases such as this one where there is no privity of contract between the plaintiff and the defendant, and the plaintiff does not qualify as a third party beneficiary of the seller's warranty under I.C. 28–2–318. This conclusion is supported by the official comment to I.C. § 28–2–313, the UCC section governing express warranties, which states that section 2–313 is meant to apply only to those warranties made "by the seller to the buyer as part of a contract for sale." This comment, recognizing that warranties often arise in a variety of non-sales contract circumstances, also states that section 2–313's warranty provisions "are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract." (The full text of comment 2 is set forth in Appendix A of this opinion).

Although we have concluded that Oats cannot maintain his breach of warranty claim under the UCC's provisions, we must still determine whether his breach of warranty claim is a products liability action in tort governed by the provisions of the IPLRA.[5] The IPLRA does not expressly state that it governs breach of warranty claims for defective products. However, the Model Uniform Product Liability Act (MUPLA), from which the Idaho statute was adopted, contains a definitional section which does expressly include breach of warranty actions within the rubric of "product liability" claims governed by the Act. The IPLRA expressly states that it only modifies previous existing applicable law "to the extent set forth in this act." I.C. § 6–1401. Thus, we will examine whether, under previous existing law, a breach of

---

4. Section 28–2–318 of the UCC, provides:

    **28–2–318. Third party beneficiaries of warranties express or implied.**—A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

5. Nissan asserts that even if Oats's breach of warranty claim is a products liability action in tort, the IPLRA's statute of repose would bar this cause of action just as it does Oats's negligent design and failure to warn claims. However, this is only true if, on remand, the district court concludes that Oats has failed to create a genuine issue whether he can rebut the presumptive ten year period of repose.

warranty action to recover for personal injuries must exist under the UCC's warranty provisions, if at all, or whether such an action can sound in tort, in which case it would more appropriately be governed by the IPLRA.

Although no Idaho cases have considered this precise question, a number of Idaho cases have established that whether tort or contract law governs a breach of warranty action depends on whether the plaintiff is seeking to recover for economic loss or personal injuries. These cases have impliedly recognized that breach of warranty actions to recover for personal injuries are more properly governed by the principles of tort law.[6] In *Salmon Rivers*, the product at issue was an airplane manufactured by Cessna Aircraft Company. The plaintiff, Salmon Rivers Sportsman Camps (Salmon Rivers), purchased the airplane from Boise Aviation. After the airplane suffered mechanical failure, Salmon Rivers sued Cessna to recover for purely economic losses (costs of repairing the airplane and loss of use and profits). In concluding that Salmon Rivers could not maintain a contract action to recover economic loss for breach of implied warranty when it was not in privity of contract with the defendant manufacturer, the Court approvingly quoted Professor Prosser for the rule that, "unless there is privity, liability to the consumer must be in tort and not in contract." *Id.* at 353–54, 544 P.2d at 311–12 (quoting Prosser, *The Assault Upon the Citadel*, 69 Yale L.J. 1099, 1134 (1960)).

In *Clark v. International Harvester Co.*, 99 Idaho 326, 332–33, 581 P.2d 784, 790–91 (1978), the plaintiffs brought a negligence action to recover purely economic losses (costs of "down time" and repair and replacement of defective tractor parts) against the manufacturer and seller of an allegedly defective tractor. The Court noted that "[t]he majority of jurisdictions which have considered the issue have not permitted the recovery of purely economic loss in a products liability action sounding in tort." *Clark*, 99 Idaho at 333, 581 P.2d at 791. The Court

further noted that the UCC carefully and painstakingly sets forth the rights between parties in a sales transaction with regard to economic loss, and "[t]his Court, in the common law evolution of the tort law of this state, must recognize the legislature's action in this area of commercial law and should accommodate when possible the evolution of tort law with the principles laid down in the UCC." *Id.* at 335, 581 P.2d at 793. Reasoning that no "good purpose would be achieved by undermining the operation of the UCC provisions by extending tort law to embrace purely economic losses in product liability cases", the Court refused to recognize a products liability action sounding in tort to recover for purely economic loss. Rather, the Court held that an action to recover purely economic losses must be based on a UCC action for breach of warranty. *Id.* at 335–36, 581 P.2d at 793–94.

In *Adkison Corp. v. American Bldg. Co.*, 107 Idaho 406, 690 P.2d 341 (1984), the Court expressly applied the holding in *Clark* to breach of warranty actions (*Clark* involved a negligence action). In *Adkison*, the plaintiffs, in an effort to avoid the privity requirement of contract actions for breach of warranty, sought to recover for purely economic losses through an action for breach of implied warranties in tort. The Court, citing *Clark*, refused to recognize the theory of implied warranties in tort to recover such damages, reasoning that "breach of implied warranty actions for purely economic losses must be viewed in a contract setting with relevant contract principles", and therefore "the law of contracts should control actions for purely economic losses and not the law of torts." *Adkison*, 107 Idaho at 410–11, 690 P.2d at 345–46.

*Salmon Rivers*, *Clark*, and *Adkison* all involved products liability actions to recover purely economic losses. In each case the Court determined that because the plaintiffs were seeking to recover only economic losses, as opposed to physical injuries to persons or property, the law of contracts should control

---

**6.** Although, as mentioned above, if the breach of warranty action is to recover for personal injuries allegedly caused by a defective product defined as a "good" under the UCC, the UCC's warranty sections expressly provide for such recovery as well so long as section 28-2–318's privity requirements are satisfied.

the actions and not the law of torts. In *Tusch Enters. v. Coffin*, 113 Idaho 37, 40–41, 740 P.2d 1022, 1025–26 (1987), the Court, relying on Justice Traynor's reasoning in *Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965), *overruled on other grounds as stated in Huang v. Garner*, 157 Cal.App.3d 404, 203 Cal.Rptr. 800 (1984), explained why the choice of governing law depended on the type of recovery sought:

> The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the 'luck' of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products. He can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agrees [expressly or impliedly] that the product was designed to meet the consumer's demands. *Seely v. White Motor Co.*, [63 Cal.2d 9, 45 Cal.Rptr. 17, 23] 403 P.2d 145, 151 (1965).

*Tusch Enters.*, 113 Idaho at 41, 740 P.2d at 1026. In *Seely*, the California Supreme Court held that when a breach of warranty claim is brought to recover for economic loss, rather than personal injury, the appropriate source of standards is the UCC. The Court reasoned as follows:

> The law of sales has been carefully articulated to govern the economic relations between suppliers and consumers of goods. The history of the doctrine of strict liability in tort indicates that it was designed, not to undermine the warranty provisions of the ... Uniform Commercial Code, but,

rather, to govern the distinct problem of physical injuries.

While, in the Idaho cases cited above, this Court held that breach of warranty actions to recover economic losses for defective goods must be brought under the UCC's warranty provisions, this is the first time this Court has been asked to determine whether a non-privity breach of warranty action to recover for personal injuries from a defective product is governed by the UCC, tort law, or both. Courts of other jurisdictions have considered this question. In *Greenman v. Yuba Power Prods., Inc.*, 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1963), the plaintiff, who was injured by a power tool purchased by his wife, sued the manufacturer for personal injuries based on breach of warranty. The manufacturer attempted to avoid liability by asserting that the plaintiff had failed to comply with the notice provisions of the sales law. The California Supreme Court held that in such a non-privity personal injury case the liability lay in tort, rather than in contract, and therefore the strictures of the law of sales were not applicable. *See also Heavner v. Uniroyal, Inc.*, 63 N.J. 130, 305 A.2d 412 (1973); and *Becker v. Volkswagen of Am., Inc.*, 52 Cal.App.3d 794, 125 Cal.Rptr. 326 (1975).

Courts which have decided that non-privity personal injury actions for breach of warranty are governed by tort, rather than contract law, have relied on comment m of section 402A (1965) of the Restatement to support their decision. This Court has expressly adopted the rule of strict liability in tort as set forth in RESTATEMENT (SECOND) OF TORTS § 402A (1965), as the law in Idaho. *Shields v. Morton Chemical Co.*, 95 Idaho 674, 677, 518 P.2d 857, 860 (1974). Section 402A establishes the strict liability of sellers of products for physical harm to users or consumers of those products.[7] Comment m to section

---

7. Section 402A provides as follows:

§ 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

402A explains that a breach of warranty action in tort to recover for personal injuries caused by a defective product is essentially an action for strict liability in tort, and cautions that care be taken to understand that such a " 'warranty' is a very different kind of warranty from those usually found in the sale of goods, and that it is not subject to the various contract rules which have grown up to surround such sales." The comment concludes by stating: "In short, 'warranty' must be given a new and different meaning if it is used in connection with this Section. It is much simpler to regard the liability here stated as merely one of strict liability." (The full text of comment m is set forth in appendix B of this opinion).

Based on the authorities discussed above, we conclude that when a plaintiff brings a non-privity breach of warranty action against a manufacturer or seller to recover for personal injuries allegedly sustained as a result of a defective product, that action is one for strict liability in tort, governed by the provisions of the IPLRA. Such an action should not be governed by the buyer and seller concepts of the UCC.[8] "The remedies of injured consumers ought not to be made to depend upon the intricacies of the law of sales." *Greenman*, 27 Cal.Rptr. at 701, 377 P.2d at 901 (citing *Ketterer v. Armour & Co.*, 200 F. 322, 323 (S.D.N.Y.1912); *Klein v. Duchess Sandwich Co.*, 14 Cal.2d 272, 93 P.2d 799, 804 (1939)). While it follows from our holding that Oats's "breach of warranty" claim survives under the IPLRA's statute of limitations, we fail to see how, in a personal injury product liability action not involving a commercial relationship between the manufacturer and the injured person, Oats's warranty allegations add anything to his other allegations of strict liability and negligence. *Accord Becker*, 125 Cal.Rptr. at 331; *Balido v. Improved Mach., Inc.*, 29 Cal.App.3d 633, 105 Cal.Rptr. 890 (1972).

Based on the facts and reasoning set forth above, we reverse the district court's ruling that Oats's warranty claim is barred by the UCC's statute of limitations. Oats's warranty claim is essentially one of strict liability in tort, and he may proceed with that claim subject to the common law and the provisions of the IPLRA which govern such claims.

### CONCLUSION

Because Oats failed to present any competent evidence to support his claim that the 280Z 2 + 2 had defectively weak body panels, we hold that the district court properly granted summary judgment to Nissan on that claim. Although the district court properly concluded that I.C. § 6–1403(2)(b)4's "hidden defect" exception did not apply to Oats's claim alleging that the vehicle was defective because its design failed to provide sufficient rear-seat passenger space, we vacate the order of summary judgment with respect to that claim and remand for a determination whether Oats has created a triable issue concerning rebuttal of the presumption that the vehicle had a ten year useful safe life. Having considered the type of recovery sought by Oats, and the legal grounds for his action, we conclude that the UCC's warranty provisions are not applicable in this case. Finally, we hold that Oats's breach of warranty action to recover for personal injuries is essentially a strict liability claim in tort, and it should be governed by the provisions of the IPLRA, including the IPLRA's statute of limitations, rather than the provisions of the UCC. Accordingly, we reverse the district court's order of summary judgment with respect to that claim. Because that claim is also subject to the IPLRA's statute of repose, whether the claim can withstand Nissan's motion for summary judgment depends on the district court's determination on remand concerning the applicability of the statute of repose.

No costs are awarded on appeal.

McDEVITT, C.J., and BISTLINE, JOHNSON and TROUT, JJ., concur.

---

(2) The rule stated in Subsection (1) applies although
   (a) the seller has exercised all possible care in the preparation and sale of his product, and
   (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

8. We do not decide whether the UCC, tort law, or both would govern a personal injury action for breach of warranty when the plaintiff is in privity with the seller, as that question is not presented by the facts in this case.

## APPENDIX A

Comment 2 to the official text of 28–2–313, states as follows:

2. Although *this section is limited in its scope and direct purpose to warranties made by the seller to the buyer as part of a contract for sale, the warranty sections of this Article [Chapter] are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract.* They may arise in other appropriate circumstances such as in the case of bailments for hire, whether such bailment is itself the main contract or is merely a supplying of containers under a contract for the sale of their contents. The provisions of Section 2–318 on third party beneficiaries expressly recognize this case law development within one particular area. Beyond that, the matter is left to the case law with the intention that the policies of this Act may offer useful guidance in dealing with further cases as they arise.

(Emphasis added).

## APPENDIX B

Comment m to section 402A of the Restatement (Second) of Torts states as follows:

*m. "Warranty."* The liability stated in this Section does not rest upon negligence. It is strict liability, similar in its nature to that covered by Chapters 20 and 21. The basis of liability is purely one of tort.

A number of courts, seeking a theoretical basis for the liability, have resorted to a "warranty," either running with the goods sold, by analogy to covenants running with the land, or made directly to the consumer without contract. In some instances this theory has proved to be an unfortunate one. Although warranty was in its origin a matter of tort liability, and it is generally agreed that a tort action will still lie for its breach, it has become so identified in practice with a contract of sale between the plaintiff and the defendant that the warranty theory has become something of an obstacle to the recognition of the strict liability where there is no such contract. There is nothing in this Section which would prevent any court from treating the rule stated as a matter of "warranty" to the user or consumer. *But if this is done, it should be recognized and understood that the "warranty" is a very different kind of warranty from those usually found in the sale of goods, and that it is not subject to the various contract rules which have grown up to surround such sales.*

The rule stated in this Section does not require any reliance on the part of the consumer upon the reputation, skill, or judgment of the seller who is to be held liable, nor any representation or undertaking on the part of that seller. The seller is strictly liable although, as is frequently the case, the consumer does not even know who he is at the time of consumption. *The rule stated in this Section is not governed by the provisions of the Uniform Sales Act, or those of the Uniform Commercial Code, as to warranties; and it is not affected by limitations on the scope and content of warranties, or by limitation to "buyer" and "seller" in those statutes.* Nor is the consumer required to give notice to the seller of his injury within a reasonable time after it occurs, as is provided by the Uniform Act. The consumer's cause of action does not depend upon the validity of his contract with the person from whom he acquires the product, and it is not affected by any disclaimer or other agreement, whether it be between the seller and his immediate buyer, or attached to and accompanying the product into the consumer's hands. *In short, "warranty" must be given a new and different meaning if it is used in connection with this Section. It is much simpler to regard the liability here stated as merely one of strict liability in tort.*

(Emphasis added).