NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-165                                        Appeals Court

    COPLEY PLACE ASSOCIATES, LLC vs. CARLOS TÉLLEZ-BORTONI.

                        No. 16-P-165.

        Suffolk.    December 9, 2016. - March 16, 2017.

            Present: Milkey, Massing, & Sacks, JJ.


Fraud. Deceit. Real Property, Lease. Contract, Lease of real
    estate. Practice, Civil, Summary judgment, Judgment
    notwithstanding verdict.



    Civil action commenced in the Superior Court Department on
April 24, 2012.

    A motion for summary judgment was heard by Peter M.
Lauriat, J.; the case was tried before Robert B. Gordon, J., and
a motion for judgment notwithstanding the verdict was heard by
him.


    Robert E. Curtis, Jr., for the defendant.
    Martin M. Fantozzi (David M. Zucker also present) for the
plaintiff.


    SACKS, J.  The defendant, Carlos Téllez-Bortoni, appeals

from a judgment entered against him in favor of the plaintiff,

Copley Place Associates, LLC (Copley), on claims for fraud and

violation of G. L. c. 93A.  He argues that a judge of the

Superior Court erred in awarding Copley partial summary judgment against him on liability.  We conclude that Copley's motion failed to establish as undisputed fact that Copley relied to its detriment on false representations made by Téllez-Bortoni.  We therefore vacate the judgment and remand for further proceedings.

Background.  Copley's claims arose out of a failed venture in which Irish Pub Group, Inc. (IPG), was to have operated a restaurant in space leased from Copley in its mall located in Boston.  Téllez-Bortoni signed the lease on IPG's behalf.  Section 24.11 of the lease stated, "If Tenant is or will be a corporation, the persons executing this Lease on behalf of Tenant hereby covenant and warrant that . . . the person signing this Lease on behalf of the corporation is an officer of Tenant, and is duly authorized to sign and execute this Lease."  Sometime after the lease was signed, Téllez-Bortoni informed Copley that one Raymond Houle was "a part of [IPG]," causing Copley to inform a bank that Houle could negotiate a large check Copley had issued to IPG as a portion of a "Landlord's Contribution" provided for in the lease.  Houle deposited the check in IPG's account.

IPG did not use the funds to further the project as required by the lease, the restaurant never opened, and Copley sued IPG, Téllez-Bortoni, Houle, and others on a variety of

theories, seeking to recover amounts due under the lease and other damages. IPG never denied that Téllez-Bortoni's signature sufficed to bind IPG to the lease; instead, IPG failed to appear and was defaulted. After obtaining default judgments against IPG and all other defendants except Téllez-Bortoni, the judge awarded Copley partial summary judgment against Téllez-Bortoni on liability for fraud and violation of G. L. c. 93A, premised on Copley's claimed detrimental reliance on his assertedly (1) false representations that he was an officer of IPG, duly authorized to sign the lease, and (2) misleadingly incomplete statement concerning Houle's role with IPG. After a trial on damages presided over by a different judge, a jury returned a verdict of $865,060.44, to which the judge added $126,440.09 in attorney's fees and costs. Téllez-Bortoni moved for judgment notwithstanding the verdict (JNOV) and, upon the trial judge's denial of that motion, Téllez-Bortoni filed this appeal, in which he challenges the partial summary judgment ruling.

Discussion. After briefly reviewing the law of fraud or deceit,[1] we discuss in turn the summary judgment record regarding Téllez-Bortoni's representations to Copley (1) as to his status

---

[1] For present purposes we may treat the terms "deceit" and "fraud" as interchangeable. See Graphic Arts Finishers, Inc. v. Boston Redev. Authy., 357 Mass. 40, 44 (1970); Brown v. Gerstein, 17 Mass. App. Ct. 558, 567 n.14 (1984).

as an IPG officer with authority to sign the lease, and (2) as to Houle's status vis-à-vis IPG.

"In a deceit action, the plaintiff must prove 'that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage.'" Danca v. Taunton Sav. Bank, 385 Mass. 1, 8 (1982), quoting from Barrett Assocs. v. Aronson, 346 Mass. 150, 152 (1963). "Such reliance by the plaintiff must be reasonable." Masingill v. EMC Corp., 449 Mass. 532, 540 (2007). Further, "[i]f a statement of fact which is susceptible of actual knowledge is made as of one's own knowledge and is false, it may be the basis for an action of deceit without proof of an actual intent to deceive." Pietrazak v. McDermott, 341 Mass. 107, 110 (1960). See Snyder v. Sperry & Hutchinson Co., 368 Mass. 433, 444 (1975). Finally, incomplete statements may in some circumstances amount to actionable fraud. Greenleaf Arms Realty Trust I, LLC v. New Boston Fund, Inc., 81 Mass. App. Ct. 282, 291-292 (2012).

1. Representations of officer status and authority. On Copley's motion for partial summary judgment, the judge correctly ruled it undisputed that Téllez-Bortoni's representations and warranties that he was an officer of IPG,

and duly authorized to execute the lease, were false.[2]  Based on Pietrazak v. McDermott, 341 Mass. at 110, the judge did not find it necessary to address whether Téllez-Bortoni made the representations with an actual intent to deceive.[3]  The judge then concluded, "On the basis of those representations, Copley . . . did lease premises to [IPG], and it consequently suffered financial losses."  In short, the judge viewed as undisputed that Copley had relied to its detriment on Téllez-Bortoni's representations in the lease.[4]

The summary judgment record did not support these conclusions.  Although Copley's memorandum in support of its motion recognized that it needed to establish detrimental

---

[2] Téllez-Bortoni's affidavit stated that he had instructed an associate to file incorporation papers for IPG listing him as an officer, that he had believed he was an officer, and that he had invested a substantial sum in IPG, but he ultimately acknowledged that he in fact was never an officer of IPG.

[3] Téllez-Bortoni argues, for the first time on appeal, (1) that his scienter in making these representations presented a genuine issue of material fact; and (2) that Copley failed to plead with particularity, as required by Mass.R.Civ.P. 9(b), 365 Mass. 751 (1974), that its fraud claim was based on these representations.  These arguments are waived.  It is nevertheless telling that, although Copley's complaint alleged detrimental reliance on several other specific false statements by the defendants, Copley did not think to include in this list Téllez-Bortoni's representations and warranties in the lease.

[4] The judge also did not address two other essential elements of Copley's fraud claim:  whether Téllez-Bortoni's representations were "material" and whether Copley's reliance on them was "reasonable."

reliance, its supporting statement of undisputed facts failed to do so.

The closest Copley came to addressing reliance was the statement in its memorandum in support of the motion that "it is obvious that Copley . . . would never have signed the Lease and issued a check for the first installment of Landlord's Contribution if it had known that [Téllez-Bortoni] was not authorized to enter into the Lease on behalf of [IPG]." But this assertion was not supported by any citation to the statement of undisputed material facts or to any of the underlying materials that may be considered on a motion for summary judgment. Téllez-Bortoni argued that Copley had failed to establish such reliance. Although it is plausible that Copley actually relied on the representations when entering the lease, particularly where the lease contained a "covenant and warrant" by Téllez-Bortoni as to the truth of the representations, we find no evidence to that effect in the record.[5] Moreover, it is also plausible that Copley's principal

_____

[5] We do not agree with Copley's argument that the incorporation of Téllez-Bortoni's representations and warranties into the lease was itself sufficient to establish reliance in view of the principle that "no part of the contract is to be disregarded." Starr v. Fordham, 420 Mass. 178, 190 1995), quoting from Boston Elevated Ry. v. Metropolitan Transit Authy., 323 Mass. 562, 569 (1949). That is a principle of contract interpretation, not of tort law. To be sure, Copley could also have brought a claim in contract for breach of warranty. See Carolet Corp. v. Garfield, 339 Mass. 75, 79 (1959). This might

interest was in the lease being signed and then the lessee recognizing and performing its obligations thereunder, rather than in any formal defects in the signer's authority. "In reviewing an order granting summary judgment . . . we of course apply our traditional test and consider the facts in their light most favorable to the nonmoving party, drawing all reasonable inferences in [that party's] favor." Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 38 (2005).[6]

Nor did Copley establish that it suffered any detriment as a result of the falsity of Téllez-Bortoni's assertion of officer status and authority to sign the lease. It offered no evidence

---

have avoided the need to prove reliance, but Copley still would have had to prove, as on any contract claim, that it suffered harm as a result of the breach, see Singarella v. Boston, 342 Mass. 385, 387 (1961), much as Copley was required to show on its fraud claim that its reliance caused it detriment. See infra at        .

[6] This hole in the summary judgment record is not filled by Copley's introduction of evidence, at the subsequent trial on damages, that it routinely insists upon the inclusion of a provision like the one at issue here in all of its commercial leases, and that it will not sign a lease unless the prospective tenant has signed first, thus warranting his or her authority to do so. As the trial judge stated in his JNOV decision, the jury were instructed to determine only damages -- not the question whether Copley had relied on Téllez-Bortoni's misrepresentations, which the trial judge viewed as already having been decided by the partial summary judgment. Accordingly, and because the parties have not included the trial record in the materials submitted on appeal, we can have no confidence that Téllez-Bortoni had a fair opportunity at trial to meet Copley's evidence of reliance. We also note the trial judge's observation in his JNOV decision that the evidence of Copley's reliance was "by no means overwhelming."

of such detriment, and IPG has never asserted that Téllez-Bortoni lacked authority to bind it to the lease with Copley, or otherwise disavowed anything he might have done in IPG's name. IPG did not defend against Copley's suit on the ground that the lease was invalid; rather, IPG defaulted and had a multi-million dollar default judgment entered against it. Put differently, although Copley may have suffered detriment caused by Téllez-Bortoni's bare signing of the lease (because, without a signed lease, Copley might not have allowed IPG onto the premises), we cannot discern on this record how Copley suffered detriment caused by the falsity of Téllez-Bortoni's representations in the course of signing the lease. Rather, the detriment to Copley appears to have been caused by IPG's breach of its lease obligations.[7]

2. <u>Representations as to Houle</u>. Although the motion judge did not rest his ruling on the point, Copley suggests that its reliance on Téllez-Bortoni's representation that Houle was a part of IPG, is another ground on which it was entitled to summary judgment on liability. We are not persuaded.

---

[7] "Proof of damages flowing from misrepresentations is essential to recovery. <u>Cardullo</u> v. <u>Landau</u>, 329 Mass. 5, 7 (1952)." <u>Poly</u> v. <u>Moylan</u>, 423 Mass. 141, 149 (1996), cert. denied, 519 U.S. 1114 (1997). In Massachusetts, a broader rule of causation has been applied in fraud cases involving the purchase or retention of stock. See <u>Reisman</u> v. <u>KPMG Peat Marwick LLP</u>, 57 Mass. App. Ct. 100, 111-120 & n.22 (2003). We are aware of no decision extending this broader approach beyond that context.

The summary judgment record shows that, as required by the lease, Copley issued a check for $452,450 to IPG as a portion of the "Landlord's Contribution" to assist in the build-out of the leased premises, and Houle attempted to negotiate the check. Copley's bank and a second bank questioned whether this was proper. Copley asserted that its bank raised the question directly with IPG, although there is no record support for this assertion. The record does show that one Elizabeth Hazan, who had worked with Téllez-Bortoni on IPG matters, sent an electronic mail message (e-mail) to him requesting, without reference to the check or other explanation, that he in turn send an e-mail to Copley confirming that Houle was "part of [IPG]." Téllez-Bortoni did so.[8] Copley forwarded the e-mail to the bank, which then accepted the check for deposit into IPG's account.

Copley has not asserted that Téllez-Bortoni's statement that Houle was a part of IPG was itself false. To the contrary, the record shows Copley's position, based on public corporate filings, that Houle was in fact the sole officer and director of

_____

[8] Téllez-Bortoni stated at his deposition that he sent the e-mail at Hazan's request but without her ever having explained why she wanted him to do so. He had never met Houle and did not know who Houle was, but Hazan had told him that Houle was "one of the new investors at [IPG]," that they were "buying [Téllez-Bortoni] out," and that Houle "needed to be . . . part of [IPG]." He understood that the e-mail to Copley was necessary because Houle was "a new character, a new partner" in IPG.

IPG at that time.  Nor has Copley asserted that its reliance on Téllez-Bortoni's statement about Houle led to any direct detriment or harm.  The "Landlord Contribution" check, made out to IPG and endorsed by Houle, was deposited in IPG's account, just as Copley intended.

Rather, the harm Copley asserts is that once the check was deposited, IPG did not use the money to build out the leased premises as required by the lease.[9]  Further, Hazan had told Téllez-Bortoni that she expected to receive some money soon from Copley and that once she did so, she could loan him $15,000, which he had the "impression" would come from the Copley payment.  When the check was deposited, Hazan paid him $15,000.[10]

Copley asserted that the "Landlord Contribution" would not have been made, and thus could not have been misused, but for Téllez-Bortoni's failure to disclose, in his e-mail to Copley, that (1) he had never met and did not know Houle, (2) he did not know what position Houle held with IPG, and (3) he had agreed to sell his interest in IPG to Hazan.  Copley pointed to the rule

---

[9] Copley obtained a default judgment against Houle for $6,682,975.60 in damages, presumably based not only on the use of the "Landlord Contribution" but on Houle's other acts and omissions with regard to IPG's relationship with Copley.

[10] Téllez-Bortoni's deposition testimony is unclear on whether this was a loan or part of the payment to buy out his interest in IPG.  Also, the summary judgment record does not establish as undisputed fact that the $15,000 was paid using funds IPG received from Copley.

that misleadingly incomplete statements may amount to actionable fraud:

> "[E]ven in an arms-length transaction, though there may be no duty otherwise imposed, if a party does speak 'to a given point of information, voluntarily or [otherwise], he is bound to speak honestly and to divulge all the material facts bearing upon the point that lie within his [or her] knowledge. Fragmentary information may be as misleading . . . as active misrepresentation, and half-truths may be as actionable as whole lies.' Kannavos v. Annino, 356 Mass. 42, 48 (1969)."

Greenleaf Arms Realty Trust I, LLC v. New Boston Fund, Inc., 81 Mass. App. Ct. at 291-292.

Although this theory has some appeal, at this stage of the case it is not a ground for affirmance of the judgment against Téllez-Bortoni. The theory depends both on facts that may remain in dispute and on drawing inferences in favor of Copley, whereas we must draw them in favor of Téllez-Bortoni as the nonmoving party. See Sullivan v. Liberty Mut. Ins. Co., 444 Mass. at 38. For example, Copley has not established as undisputed that Téllez-Bortoni knew he was being asked to inform Copley of Houle's role in order to clear the way for Houle to deposit the check; thus it remains unclear what additional information about Houle, if any, Téllez-Bortoni had a duty to convey to Copley.[11] Nor is it evident how Copley's damages from

---

[11] Nor has Copley established as undisputed that, had it been told of the additional information it asserts Téllez-Bortoni misleadingly omitted, it would have stopped Houle from

its reliance on Téllez-Bortoni's statement about Houle could exceed the misused $452,460 "Landlord's Contribution" and thus justify the entire verdict of $865,060.44 returned by the jury. In sum, whether Téllez-Bortoni's statement to Copley about Houle constituted fraud and justified the judgment requires further development on remand.[12]

Conclusion. The order granting partial summary judgment on liability against Téllez-Bortoni is vacated. The judgment against Téllez-Bortoni entered September 24, 2015, Paragraph 3 of the Consolidated Final Judgment entered October 16, 2015, and the order denying the motion for JNOV are vacated. The jury verdict on damages is set aside, and the case is remanded for further proceedings consistent with this opinion.

So ordered.

---

negotiating the check and then altered its relationship with IPG.

[12] Although reliance is not a necessary element of a G. L. c. 93A claim, see Giuffrida v. High Country Investor, Inc., 73 Mass. App. Ct. 225, 240-241 & n.16 (2008) (adding that causation remains an essential element), the parties' arguments on appeal treat Copley's G. L. c. 93A claim as dependent on the success of its fraud claim, or at least on a claim of negligent misrepresentation. Both fraud and negligent misrepresentation claims require proof of detrimental reliance. See Masingill v. EMC Corp., 449 Mass. at 540; DeWolfe v. Hingham Centre, Ltd., 464 Mass. 795, 799-800 (2013). Because that has not been shown on this record, and because Copley has not argued that its G. L. c. 93A claim is separately viable (an issue on which we express no view), we vacate the G. L. c. 93A liability ruling as well.